# Estate of Joseph Fleming.   Appeal of George S. Fleming.

*Will—Construction of—Interest.*

Testator by his will directed that his interest in a partnership should be appraised, and that his son should be permitted to purchase it at a discount of twenty per cent from the appraisement. A reasonable time was to be given the son " to make payment therefor, such time not to exceed five years." In a codicil testator stated that as the good-will of the partnership was of so much value, and his son's opportunities for making money were so good, he ought not to give him the additional advantage of a twenty per cent discount. He accordingly revoked the clause in the will which allowed the son to take the partnership interest at a discount of twenty per cent. He appointed his son and another person executors. There was no direction in the will as to the payment of interest, and when the son made various payments on account of the partnership property upon the request of his co-executor, he always denied his liability to pay interest. The son in accepting the partnership interest agreed to pay for the same " upon all the terms and conditions allowed " by testator. To secure the payment he gave a judgment note payable one day after date. No interest was specified in the agreement of acceptance, or in the judgment note. *Held*, that the amount for which the son was liable on the partnership property did not become due until the expiration of five years from testator's death.

*Interest—When demandable.*

Interest is compensation to the creditor for a wrongful delay by the debtor. It is not demandable until a debt is due, unless the instrument creating the debt stipulates otherwise. A debt is due whenever a liquidated sum of money is unjustly withheld.

Argued Oct. 28, 1897. Appeal, No. 104, Oct. T., 1897, by George S. Fleming, from decree of O. C. Allegheny Co., Nov. T., 1896, No. 55, overruling exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed. STERRETT, C. J., dissented.

Exceptions to adjudication. Before HAWKINS, P. J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*W. B. Rodgers*, with him *Henry R. Ewing*, for appellant.— Interest is never demandable until money is due. It is com-

pletely due whenever a liquidated sum of money is unjustly withheld. It is a legal and uniform rate of damages allowed in the absence of any express contract, when payment is withheld after it has become the duty of the debtor to discharge the debt: Kelsey v. Murphy, 30 Pa. 340. When money is not due, and no contract exists for its payment, it must be an exceptional case when it is legally demandable: Minard v. Beans, 64 Pa. 413.

*William Yost,* for appellee.—If a note be payable at a fixed time, as at one day after date, and there be a subsequent agreement that suit shall not be brought so long as the maker is alive or the payee is satisfied that he is solvent, interest still runs from the time the debt is legally due: Powell v. Guy, 3 Devereux & Battle, 70; Rollman v. Baker, 5 Humphreys, 406; Sheehy v. Mandeville, 7 Cranch, 208; Francis v. Castleman, 4 Bibb, 282; Collier v. Gray, 1 Overton (Tenn.), 110; Rogers v. Colt, 1 Zabriskie, 19.

The question of interest upon a claim is always determined upon equitable principles. It has no other foundation, except in the case of an express contract: Crawford v. Willing, 4 Dall. 286; Obermyer v. Nichols, 6 Binney, 159; Eckert v. Wilson, 12 S. & R. 398; Fasholt v. Reed, 16 S. & R. 266; McCormick v. Crall, 6 W. 207; Kester v. Rockel, 2 W. & S. 365; Culp v. Fisher, 1 W. 494; Troubat v. Hunter, 5 Rawle, 263; Selden v. James, 6 Randolph, 465; Brockenbrough v. Blythe, 3 Leigh, 619; Railroad v. Gesner, 20 Pa. 240; Allegheny v. Campbell, 107 Pa. 535; Mining Co. v. Jones, 108 Pa. 69; Beals v. Guernsey, 8 Johnson, 446; Bissell v. Hopkins, 4 Cowan, 53; Moore v. Pendergrast, 6 J. J. Marshall, 534; Taylor v. Knox, 5 Dana, 466; Perley on Interest, 133; Gyger's App., 62 Pa. 73.

What is reasonable time must in all cases be considered according to the circumstances. In all mercantile transactions, reasonable time is extremely short: Jackson v. Saunders, 1 Scho. & Lef. 461.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:

Joseph Fleming, a dealer in drugs in Pittsburg, and possessed of a considerable estate, some weeks before making his will on October 30, 1889, took his son, this appellant, into partnership

in the business, selling to him a fourth interest, and himself reserving three fourths.   In less than six months thereafter, on May 15, 1890, the father died, leaving children, besides George, the appellant, four daughters.   He appointed the son, George, and Robert F. Shannon, a son-in-law, executors of his will. The third item of it is as follows :

"I have recently admitted my son George S. Fleming as a partner in my business at No. 412 Market St. Pittsburg, (wholesale and retail dealer in drugs, &c.)   Should he develop fairly good business qualities, and be willing to continue the business after my death, I desire that he should have the privilege of doing so, and in that event and for that purpose I direct that a fair and just inventory and appraisement of my interest in said firm or business be made as provided in our articles of copartnership, and that George shall be permitted to take and purchase the same at a reduction of twenty per centum from such valuation, and further, if his share of my personal estate which I bequeath to him in this should not be sufficient to pay for said stock and interest, I direct that a reasonable time be given him by my executors to make payment therefor, such time not to exceed five years, however, and if he should then fail or neglect to meet his payments, I direct that the sum or sums so remaining unpaid shall be deducted from his share of my real estate herein devised to him and be added to the shares of his sisters in such real estate."

By a codicil dated January 29, 1890, he modified the bequest thus :

"I, Joseph Fleming, the above named testator, do hereby make and declare the following codicil to my above written will.   Upon further consideration it appears to me that the good will of the drug business referred to in the third item of my said will is of so much value, and my son's present opportunities for making money are so good, I ought not to give him the additional advantage of a twenty per cent discount on the stock.   I therefore hereby revoke that clause in said item which allows him to take the said stock, etc., at a discount of twenty per cent from the valuation thereof, and I now will and direct that my son George be allowed to take said stock, etc. at the valuation that shall be placed thereon by the appraisement made as in said third item provided."

An appraisement of the father's interest in the drug business was made as directed immediately after his death, no account being taken of the good will; it amounted to $48,992.05, and George accepted it at that valuation. The reasonable time, not exceeding five years, which George was by the will to have for payment was not otherwise fixed by the executors. He however made large payments from time to time, commencing soon after the appraisement, and up to the filing of this fifth account, October 2, 1896, the balance then unpaid of the principal was but $13,145.05. In filing his account as executor George charged himself with no interest on the appraisement of the drug business. On exceptions filed, the court below surcharged him with interest from June 21, 1890, the day of appraisement, on the balances remaining unpaid of the purchase money. The appellant admitted he was answerable for interest on any balance due at the end of five years, but contended that under the will he had five years to pay the principal, and during that time no interest should be computed. Because the court below did not sustain his contention, we have this appeal.

If the intent of the testator with regard to charging interest on the appraisement can be ascertained with reasonable certainty from the will, that intent must control; if we cannot find the intent from that instrument, then, to determine the liability we must adopt the rules of law applied in like or analogous cases. The learned judge of the court below was of opinion, that the will clearly disclosed a general intent to equalize his gifts among all the children; but that if George be exempted from payment of interest, then he is to that extent benefited, the other children discriminated against, and the intent defeated; that is, the general intent to equalize would fail, because a particular intent was assumed, in the absence of any words in the will warranting the assumption.

If the intent to equalize the whole estate be clear, the conclusion ought to follow, for the intent to favor the son by exempting him from payment of interest it may be conceded is not beyond all doubt. But in proportion as the evidence pointing to a particular intent to discriminate makes prominent that intent, that pointing to a general intent to equalize the distribution is of course weakened. As we read this will the evidence of an intent to favor the son decidedly outweighs that

in favor of an intent to equalize.  The testator in the body of
the will positively expresses an intention to discriminate in
favor of George.   On October 30, 1889, the date of the will,
when the son had been but a short time his partner, he says,
"should he develop fairly good business qualities, and be wil-
ling to continue the business after my death," then a fair valua-
tion of the property is to be made, and "George shall be
permitted to take and purchase the same at a reduction of
twenty per cent from such valuation."   This is an express indi-
cation of favor, by giving to George for eighty cents that which
at a "fair valuation" is worth a dollar.   But it is argued that.
by the codicil, made three months afterwards, the testator shows
an abandonment of that intention.   We think not.   It only
shows that on reflection he discovered, that inadvertently per-
haps, by the terms of the bequest there would be a practical de-
duction of forty per cent instead of twenty.   He says, "Upon
further consideration it appears to me that the good will of the
drug business referred to in the third item of my will is of so
much value, and my son's present opportunities for making
money are so good, I ought not to give him the additional ad-
vantage of a twenty per cent discount on the stock."   Evi-
dently he supposed the good will was not an appraisable asset
of his estate, or that it passed to George as surviving partner
on dissolution, by his own death, of the partnership.   On re-
flection he realizes its value; he had built up a large business
as a merchant; he knew the value of a good will, and doubtless
believed it would add twenty per cent to the "fair and just
inventory and appraisement of the stock;" he therefore revokes
the gift of twenty per cent, not with a view to take that much
from George, to make him equal with his sisters, but that
George may not in effect get forty instead of twenty per cent.
Taking the words of the will and codicil together, and in view
of the subject of the bequest, we think there was an almost
plainly expressed intent to still discriminate in favor of the son
with reference to the bequest of the drug business.   Starting
with the fact then, that the father did intend to favor George
in this purchase, what construction shall be put upon the di-
rection as to time of payment, and the date from which interest
should be computed?   He says: "If his share of my personal
estate which I bequeath to him in this should not be sufficient

to pay for said stock and interest, I direct that a reasonable time be given him by my executors, to make payment therefor, such time not to exceed five years, however,—and if he should then fail or neglect to meet his payments, I direct that the sum or sums so remaining unpaid shall be deducted from his share of my real estate herein devised to him, and be added to the share of his sisters in such real estate." It is a settled rule that interest is not demandable until the money is due, unless the instrument stipulates otherwise. It is due whenever a liquidated sum of money is unjustly withheld, and interest is compensation to the creditor for wrongful delay by the debtor. It is unnecessary to cite authorities for so familiar a rule. The testator clearly did not expect the son to pay this large sum out of the profits of the drug business, for he expressly subjects the son's share of the personalty to the payment in the first instance, and if that be not sufficient, then the amount is to be paid out of his share of the realty. The personalty barely sufficed to pay testator's debts,—a contingency probably apprehended by him, and the amount remaining unpaid is therefore secured or charged on the son's share of the realty. But the intent is clear, the son should not be embarrassed by an immediate demand for the debt, as if it were due, for if the personalty be absorbed by his own debts, the son cannot pay; in that event, reasonable time is to be given, not exceeding five years; then, if anything remains unpaid, it is to be deducted from the son's share of the realty. If there had been personalty exceeding testator's debts, undoubtedly the son's share would, under the express terms of the will, have been immediately applicable to the payment of the appraisement, and to that extent it would have been from that time due and payable; there was no personalty, however, for the son and, therefore, payment was to be made within a reasonable period, not exceeding five years. In the mind of the testator five years was not an unreasonable time for payment, and no compulsory payment was intended within that period, if there was no personalty out of which to make payment; but, after the expiration of that time, payment could be compelled out of the son's share of the realty. This is not a contract for purchase as in the cases cited by appellee, where the vendee goes into possession, and equity presumes interest is to be paid on the purchase money although not so stipulated,

because of the benefit arising to the vendee from possession; it is a bequest by a father to a son of a valuable business at a price to be fixed by disinterested appraisers, the testator specifying the sources of payment, and the time within which payment is to be made. A less time could have been determined on by the legatee and the executors; of these last the legatee was one out of two; the other could not of himself have determined that a less time than five years was reasonable, for the testator has said that five years was that reasonable time. He has therefore fixed the date the money was due and payable; until the expiration of that time, it was not wrongfully withheld, and no interest, until then, was demandable.

It is argued that the son by payments within the five years gave to the will appellee's construction of it. In view of the surroundings of the parties and the condition of the estate we think this has but little significance. Robert F. Shannon, the other executor, states that he very often demanded money from George, on the bequest; that money was needed to satisfy a mortgage, and for other purposes directed by the will, and George frequently made payments; he admits, however, that George always denied any liability for interest. Why should not the son and executor, jointly interested in the estate with his sisters, do everything in his power to relieve the estate from incumbrances, if he was able to aid it? If he partly anticipated payment of his own debt at some loss to himself it was not, in view of the circumstances, such improbable conduct as could be construed into an admission of legal liability. It is further argued by appellee, that the agreement by which the son accepted the business at the appraisement was a construction of the will against his present contention. The agreement, it seems to us, is evidence in his favor. By it he agrees with Shannon, the other executor, that he accepts the property at the appraisement, and will pay for the same " upon all the terms and conditions allowed by Joseph Fleming, deceased, in his will." Not a word is said about the money being due presently, or within a period less than five years; the word interest is not mentioned in it; but there is a distinct recognition of that period as a controlling one for time of collection of the partnership debts, thus: " This agreement being made on condition that I (George S. Fleming) am to use all reasonable endeavor to col-

lect all the outstanding bills and accounts receivable of said firm, and those which I am unable within five years to collect, I am to be allowed a credit for on final settlement." The judgment note for $50,000 payable one day after date expresses on its face that it was merely collateral security for the appraisement, under the terms of the will of Joseph Fleming. It was, in fact, an additional security to the amount of it, not provided for in the will, because by means of it a levy could have been made on any property owned by him, other than his share in the real estate. He gave it voluntarily, for the will did not exact it. It is no more an admission of present liability than the agreement already referred to.

The testator by long years of indefatigable toil and assiduous attention had accumulated wealth and built up a large and prosperous business. Like most aged men in similar circumstances he was doubtless desirous of perpetuating, as far as he could do so, this business, and at the same time have the family name connected with it; hence, in addition to paternal affection for his only son, he sought to gratify his family pride, by such favorable provision in his will as would insure the son's continued success. He in effect bequeathed to him the store and goodwill at a price below their fair value; he then, apparently to guard against impairment of capital, directed that the son should not be compelled to pay within a period of five years; he seeks to protect the son's possession of the old established business stand by a prohibition against high rent for fifteen years, and that the son should have the first right to become owner of the building at a not excessive valuation. We think, taking the whole will in view of the surroundings, the testator intended to discriminate in favor of his son as to this part of the property; and while there is as to all his other property an intent to equalize distribution among his children, he did not so intend as to this bequest. We are of opinion that the court erred in surcharging him with interest before the expiration of the five years, and the surcharge is directed to be stricken from the account, costs of appeal to be paid by appellee.