National Bank notice to the world of the bank's owner-
ship? In our opinion it was not. The legislature had
an object in view in passing the Act of 1901, and that
object certainly was to make 'void and of non effect' se-
cret trusts of exactly the character of the one in this
case. If defendants' contention that plaintiff was bound
to make inquiry of the tenant and ascertain from whom
he held the property is correct, the statute would not
change the existing law and was therefore useless legis-
lation."

Judgment affirmed.

---

# Dilworth's Estate.

*Wills—Construction—Dispository clause—Modification by subse-
quent provision—Option to purchase—Exercise of option—Title to
personal property—Guardians—Authority—Ratification.*

1. Testator by will bequeathed all the residue of his estate, which
included certain stock in a limited partnership, to his wife, "abso-
lutely in fee, subject, nevertheless, to the terms and conditions
hereinafter set forth." This was followed by a provision granting
to each of his four brothers and sisters an option to purchase one-
fourth of all the shares and interests in the copartnership for a
given sum, such option to be exercised by the next of kin of
brothers and sisters who should predecease him, and to be paid for
in interest-bearing notes, dated as of the date of his death. Upon
failure to exercise the option it was provided that the decedent's
interest in the copartnership should "be vested in my said wife, and
become her absolute property, with the same force and effect as
though such option had not been granted." The option was exer-
cised by the living brothers and sisters and guardians of the minor
children of those who were deceased. The widow refused to accept
the notes signed by these parties for their proportionate shares of
the consideration money, and claimed the shares as her property.
*Held,* that the dispository clause raised only a presumption of
absolute gift, which was explained and modified by the subsequent
provisions, and that when the option to purchase was accepted,
title to the stock related back to the inception of the will and
became as absolute as though there had been a direct bequest in
the first instance subject to the payment of a specified sum.

2. In such a case where the alternative bequest, in the event of the death of brother or sister, to the next of kin, was without restriction on account of age, an acceptance of the option by the guardians of minors must have been in the contemplation of the testator and is sufficient and valid under the will; and if there was no precedent authority given, ratification of their acceptance is its equivalent, which ratification will be given where the facts justify such authority.

Argued Nov. 3, 1913. Appeal, No. 165, Oct. T., 1913, by Elizabeth Louise Dilworth, from decree of O. C. Allegheny Co., March T., 1913, No. 156, dismissing exceptions to adjudication in the Estate of Charles R. Dilworth, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication.

HAWKINS, P. J., filed the following opinion:

The questions raised in this case are whether or not,

1. This testator gave his brothers and sisters or their next of kin a legal option to purchase certain stocks; and if so,

2. That option has been exercised in a legal manner.

The material facts are these:

Mr. Dilworth died August 29, 1911, domiciled in New York, leaving a will dated June 22, 1907, which was duly probated there and here, and by which after the usual preliminaries he provided as follows:

"Third. All the rest, residue and remainder of my estate, both real and personal, of whatsoever it may consist, or wherever it may be situated, either now in my possession or hereafter to be acquired by me, or over which I have power of disposition by testamentary writing or otherwise, I give, devise and bequeath unto my beloved wife, Elizabeth Louise Dilworth, absolutely in fee, subject, nevertheless, to the terms and conditions hereinafter set forth.

"Fourth. It is my will and I hereby expressly direct that my brothers, Lawrence Dilworth, of Pittsburgh,

Pennsylvania, and Joseph R. Dilworth, of New York, and my sisters, Elizabeth D. Beggs, of New York, and Louise D. Beggs, of Pittsburgh, Pennsylvania, shall have the option to purchase all the shares and interest in the copartnership of Dilworth, Porter & Company, Limited, of Pittsburgh, Pennsylvania, which I may own or to which I may be entitled at the time of my decease, for the sum of two hundred thousand dollars ($200,000), each of them to have a one-quarter share in said interest, and in case of the omission of either or any of said brothers, or sisters, to exercise said option to purchase, then the other of said brothers and sisters hereinbefore mentioned may exercise such option and acquire my share and interest in the said co-partnership of Dilworth, Porter & Company, Limited, said interest to be taken by such brothers and sisters exercising such option equally share and share alike. It is expressly provided, however, that in case either or any of my said brothers and sisters shall predecease me, his her or their next of kin may exercise the option above referred to in the same manner as though such deceased brother or sister or brothers or sisters were respectively living at the time of my death; but said option, however, in any event must be exercised within six months after the date of my death, and the election to exercise same must be expressed by notice in writing addressed to my said wife by the person or persons exercising the same. The said sum of two hundred thousand ($200,000) dollars, however, expressed as the consideration for my share and interest in said copartnership shall be paid at the expiration of five years from the date of my decease, and shall be evidenced by the promissory note or notes of the person or persons so exercising the option to purchase such share and interest as aforesaid, which note or notes shall be dated as of the day of my death, payable to my said wife five (5) years after the date thereof, bearing interest at the rate of five (5) per cent. per annum, payable semi-annually, the first payment of

interest to be on a day six (6) months after the date of my decease, and the said payments of interest are to be continued every six (6) months thereafter until the said principal sum of two hundred thousand ($200,000) dollars is fully and completely paid. In the event, however, that none of my said brothers or sisters or their next of kin, as the case may be, shall exercise such option to purchase in the manner and form hereinbefore prescribed, then my said share and interest in the said copartnership of Dilworth, Porter & Company, Limited, shall at and after the expiration of said six (6) months from the date of my demise, be vested in my said wife, and become her absolute property, with the same force and effect as though such option had not been granted. In case said option be exercised by my said brothers and sisters, or any one or more of them, or their next of kin, as hereinbefore provided, then in that event I direct my executrix thereupon to deliver to the person or persons exercising such option any and all certificates of stock representing my said share and interest in said copartnership of Dilworth, Porter & Company, Limited, and to make, execute and deliver any and all instruments and documents which may be or become necessary to fully and completely vest my said share and interest in said copartnership in the person or persons who by reason of the exercise of the option as hereinbefore provided, shall thereupon be entitled thereto, upon the delivery to my said wife of the promissory note or notes as hereinbefore provided."

Mrs. Dilworth was made executrix of the will.

Lawrence Dilworth, a brother, and Louise D. Beggs, sister, died before Charles R. Dilworth, leaving issue, several of whom were minors and for whom the Fidelity Title & Trust Company and the Safe Deposit & Trust Company were respectively appointed guardians; and Joseph R. Dilworth, brother, and Elizabeth D. Beggs, sister, survived. On October 14, 1911, petitions were presented on behalf of the guardians above mentioned

which after reciting the provisions of Mr. Dilworth's will quoted and the need of authority as ancillary guardians "in order to accept the option aforesaid" for the benefit of their wards, asked leave to apply to the surrogate of New York for such appointment, whereupon leave was granted and bond given in accordance with the law of New York; and the appointment made. By paper duly signed and dated December 9, 1911, all parties interested including the minors by their guardians respectively elected to accept Mr. Dilworth's stock in the partnership of Dilworth, Porter & Company, Limited, in accordance with the terms of his will; and this election was duly served on Mrs. Dilworth December 20, 1911. On the 26th day of February following eight notes signed by these parties including the guardians for their proportionate shares respectively of the consideration made payable to Mrs. Dilworth individually and successively eight similar notes made payable to her as executrix, were tendered and refused. In the meantime, December 1, 1911, a bill in equity was filed on behalf of Mrs. Dilworth in the Court of Common Pleas of this county against these claims in which among other things,

"16th. Your orator avers that under the will of Charles R. Dilworth, deceased, she takes said interest in Dilworth, Porter & Company, Limited, absolutely; that the condition under said will is in restraint of her right of alienation of said interest and is repugnant to the absolute devise to her of his interest in Dilworth, Porter & Company, Limited, and that the condition under said will and under the laws of the State of New York and State of Pennsylvania is absolutely void."
and asks that they be restrained from interfering in any manner with her said ownership. This bill was afterwards "withdrawn" for lack of jurisdiction.

Assuming the legality of the option given by Mr. Dilworth, it is objected that the notes tendered by the guardians were without authority and consequently without

value; and the guardians, while denying the soundness of this objection, expressed their willingness to pay their shares in cash.

If authority in the guardians to accept the stock as provided by the will was lacking, this court has now no hesitation in ratifying their action. Acceptance is clearly advantageous to their wards. The firm of Dilworth, Porter & Company, Limited, is in prosperous condition. The book value of its stock is $138.00 per share, being $87.22 in excess of testator's estimate. The appraisement of Mr. Dilworth's share made as a basis for the assessment of collateral inheritance tax was $499,110.00, less purchase price as per will, $200,000.

It is admitted that all decedent's debts have been paid, there is in the hands of the executrix upwards of $40,000 assets undistributed, and in the hands of the ancillary administrator as shown by the present account, a balance of $621,362.24.

The statement of collateral inheritance tax is as follows:

"Personal bequests to collaterals,     $499,110.00
Less purchase price as per will,      200,000.00
                                      _____
                                      $299,110.00

Tax $14,955.50."

Pending determination of question of stock in issue.

Profits on the stock from Dilworth's death to Jan. 1, 1913, amounted to $58,950.00.

Mrs. Dilworth testified that she had been advised by her domiciliary counsel that she would be liable for a transfer tax on the stock under a New York statute; but no other proof was offered at the audit, of the existence of such a statute, or of any claim made on behalf of that state for such a tax although this court called local counsel's attention to the need of his proof; and it was objected that even if such proof had been made the local claimants would not be liable and it was suggested the

case fell within the principal of Small's Estate, 151
Pa. 1.

It is a mistake to say that Mr. Dilworth gave his wife
an absolute estate in the third paragraph of his will.
The gift was made expressly "subject to the terms and
conditions hereinafter set forth"; and then immediately
follow the "terms and conditions" of the fourth para-
graph, which are the only terms and conditions to which
the testator could have had reference.  It is conceded
that the purpose plainly manifested in the fourth para-
graph was to vest in his brothers and sisters or their
issue an option to buy specified stocks; but it is insisted
that this is a void gift because it deprives the widow of
an incident of ownership.  It cannot be doubted that if
"the terms and conditions" of the fourth paragraph had
been a direction for the absolute transfer of this stock,
the executrix must have obeyed it; and why not when an
"option to purchase" is the subject of gift?  Testator
might have ordered a public sale of the stock; and why
not a private sale?  If an option inter vivos had been
given, the executrix could have been forced to make
transfer; and why not in case of a testamentary option?
In either event, election to accept in accordance with
the terms and conditions of the will would vest the
equitable title in the purchaser with a right to demand
transfer of the legal title by the executrix.  The "option
to purchase" was a bequest, and when accepted, title to
the stock related back to the inception of the will and
became as absolute as though there had been a direct be-
quest in the first instance subject to the payment of a
specified sum.  Because interest on the purchase money
notes was made to run from testator's death, the neces-
sary implication is that title in the stock was to run
from the same date.  Bayer v. Walsh, 166 Pa. 38, fur-
nishes a clear recognition of the efficacy of such bequests.
An absolute devise having been made to the children,
Alice, Edward and Joseph, followed by an "option" to
Alice to "purchase" the interests of her brothers within

five years after testator's death, the court said that Alice had an "undoubted" right to exercise the option given her by the will, and that having done so, she was as completely invested with the title devised to her brothers as that devised to her in the first instance; and that the transaction was in no sense a purchase, for that would imply consent on the brother's part, which under the terms of the will was wholly unnecessary. Here, too, the title to the stocks was made contingent upon the exercise of the option to purchase; and when exercised, gave the parties a right by the express terms of the will to demand transfer by the executor as the personal representative of testator. The widow never had any title to this stock. The will expressly provides that only in the event of refusal to accept the option shall it pass to her. In the meantime the legal title was in the executrix. Administration ordinarily implies conversion by the executor. In the absence of inconsistent provision the widow might have elected to take these stocks instead of their value; but here there was an express restriction of her right, to cash. This was one of the "terms and conditions" upon which she took under the will and necessarily excluded any other subject of distribution. She must take cash or nothing. The dispository clause raised only a presumption of absolute gift which was explained and modified by the subsequent provisions: Keown's Estate, 238 Pa. 343.

2. Nor has the objection to the validity of acceptance of the "option to purchase" any merit. The alternative bequest, in the event of the death of brother or sister, to the next kin, was without restriction on account of age, and necessarily embraced minors as well as majors; and as under the law, minors were incompetent to act, it must be presumed that Mr. Dilworth had in contemplation action by their guardians. These might have assumed the risk of acceptance; but there was at least implied sanction given by this court to their declared purpose of acceptance through ancillary appointment.

There can be no doubt that the facts justified the grant of authority, for they show great advantage to the wards in acceptance; and if there was no precedent authority given, ratification of their acceptance is its equivalent: Hauer's App., 5 W. & S. 473.

3. Mere proof of demand made on the executrix for payment of the alleged transfer tax without proof of legislative authority cannot be regarded in this foreign jurisdiction. But assuming such proof made the justice of the claim is more than doubtful. As distribution is made here under the Act of 1905, and the principle of Small's Appeal, 151 Pa. 1, applies, the parties accepting the stock ought not be subjected to double taxation. The Act of 1905 modified the law of comity and put it in the power of next of kin and legatees to make distribution a purely local question. This court's adjudication of audit is conclusive as to all persons having claims against the fund in accountant's hands; and by necessary implication will bar any claim against the Executrix in the domicillary state: Tilt v. Kelsey, 207 U. S. 43.

The court dismissed the exceptions.

*Error assigned,* among others, was the decree of the court.

*W. A. Stone,* of *Stone & Stone,* for appellant.—The devise to the widow of the interest of the testator in the partnership is an absolute devise in fee, and the condition attached to it is a condition in restraint of alienation, and therefore void: Bailey v. Pittsburgh, Etc., Railway Co., 208 Pa. 45; Gilchrist v. Empfield, 194 Pa. 397; Reifsnyder v. Hunter, 19 Pa. 41; Walker v. Vincent, 19 Pa. 369; Rosher v. Rosher, L. R. 26 Ch. Div. 801; Sheets's Est., 52 Pa. 257; Smith v. Piper, 231 Pa. 378; Good v. Fichthorn, 144 Pa. 287; Jauretche v. Proctor, 48 Pa. 466; McCullough v. Gilmore, 11 Pa. 370; Evans v. Smith, 166 Pa. 625.

*George B. Gordon,* of *Gordon & Smith,* with him *William R. Blair,* for appellee, cited Bayer v. Walsh, 166 Pa. 38; Reed's Est., 82 Pa. 428; Cleveland v. Sterrett, 70 Pa. 204; Ephrata Water Company v. Ephrata Boro., 20 Pa. Superior Ct. 149; Zuck v. McClure, 98 Pa. 541; Price v. Beach, 20 Pa. Superior Ct. 291; Stewart v. Short, 130 Pa. 395; Hills v. Exchange Bank, 105 U. S. 319.

It is clear that the residuary clause has nothing to do with the testator's interest in Dilworth, Porter & Company, Limited. It is settled beyond controversy, that in testamentary language, the words, "rest, residue and remainder" in a will, mean only everything not otherwise effectually disposed of: Willard's Est., 68 Pa. 327; Fox's App., 99 Pa. 382; Merkel's App., 109 Pa. 235; Morton v. Woodbury, 153 N. Y. 243; Trunkey v. Vansant, 176 N. Y. 535.

Even was there any obscurity with reference to this Dilworth, Porter & Company, Limited, stock, even if there had been a clear prior bequest of this stock to the wife absolutely, nevertheless, if, in any part of the will, it had appeared that it was intended that she was only to take a qualified interest therein, such intent would be carried out by the court: Good v. Fichthorn, 144 Pa. 287; Krebs's Est., 184 Pa. 222; Sheets's Est., 52 Pa. 257; Urich v. Merkel, 81 Pa. 332; Fox's App., 99 Pa. 382; Tyson's App., 191 Pa. 218; Shower's Est., 211 Pa. 297; Allen v. Hirlinger, 219 Pa. 56; Boulevard from Second Street, 230 Pa. 491; Hoopes's Est., 231 Pa. 232; Smith v. Piper, 231 Pa. 378; Briggs v. Caldwell, 236 Pa. 369; Fassitt v. Seip, 240 Pa. 406; Roseboom v. Roseboom, 81 N. Y. 356; Byrnes v. Stillwell, 103 N. Y. 453; Banzer v. Banzer, 156 N. Y. 429.

But, assuming, though contrary to the expressed will of the testator, that his wife took an estate subject to being divested by the exercise of the option by the brothers and sisters, nephews and nieces, nevertheless such a condition would be entirely valid: Norris v.

Beyea, 13 N. Y. 273-a; Tyson v. Blake, 22 N. Y. 558; Deihl v. King, 6 S. & R. 29; Bailey v. Pittsburgh, Etc., Ry. Co., 208 Pa. 45; Gilchrist v. Empfield, 194 Pa. 397; Walker v. Vincent, 19 Pa. 369; Rea v. Bell, 147 Pa. 118; Good v. Fichthorn, 144 Pa. 287.

PER CURIAM, January 5, 1914:

The decree of the Orphans' Court appealed from is affirmed on the opinion of Judge HAWKINS.

---

## Johnson v. Stewart, Appellant.

*Insurance—Fire insurance—Policy—Construction—Bailment— Grain elevator—Loss by fire—Rights of strangers to insurance policy—Evidence—Parol evidence rule.*

1. Where the bailor of property claims under a fire insurance policy effected by one not the owner of the goods, it must appear that the party effecting the insurance intended when taking out the policy to cover the bailor's interest and this intention must be ascertained not by parol evidence, but by the terms of the contract contained in the policy.

2. An insurance policy issued to a grain warehouseman securing the insured against loss by fire "on merchandise of every description incidental to the business of the assured consisting chiefly of grain, grain products, etc.......their own or held by them in trust or on commission or consignment or sold but not removed, all while contained in the iron-clad building occupied as elevator," will, as between the parties to the contract of insurance, cover malt not in the warehouse at the time and subsequently shipped thereto, and as between the parties to the contract, extrinsic evidence is inadmissible to contradict or vary its terms.

3. Where a third person not a party to an instrument claims rights or benefits thereunder and seeks to take advantage thereof in an action against one of the parties to the contract, the parol evidence rule applies and neither of the parties to the action is entitled to introduce evidence to vary or contradict the writing.

4. The bailor of goods in a warehouse destroyed by fire may lawfully adopt the benefit of the insurance previously effected by the warehouseman, if he notify the latter before proof of loss is made.