*Decision will be entered under Rule 50.*

J. Gordon Mack, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 249. Promulgated February 29, 1944.

*John A. McCann, Esq.*, for the petitioner.
*J. Harrison Miller, Esq.*, for the respondent.

OPINION.

Smith, *Judge*: This proceeding involves a deficiency of $20.90 in petitioner's income tax for 1940. The question for our determination

is the proper basis to be used in determining the gain upon the sale in 1940 of shares of stock which the petitioner acquired under a testamentary option from the trustees under his father's will.

The facts are found as stipulated. They are in substance as follows:

The petitioner is a resident of McKeesport, Pennsylvania. He filed his income tax return for 1940 with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh.

On September 27, 1940, petitioner's father, John S. Mack, died testate while a resident of McKeesport. His last will and testament was duly admitted to probate in the Orphan's Court of Allegheny County, Pennsylvania. Paragraph eighth of the will provided in part as follows:

*Eighth:* All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever, and wheresoever situate, I give, devise and bequeath unto UNION TRUST COMPANY OF PITTSBURGH and J. PAUL FIFE, ESQ., in trust, for the following uses, persons and purposes, and with the following powers:

\*  \*  \*  \*  \*  \*  \*

(b) I direct that my Trustees shall set aside Twenty Thousand (20,000) shares of my common capital stock of G. C. MURPHY COMPANY for the benefit of my sons, JOHN GORDON MACK and JAMES S. MACK, and the institutions hereinafter mentioned. At any time during the first ten (10) years after the date of my death my Trustees shall sell and deliver to my said sons said Twenty Thousand (20,000) shares and any stock dividends thereon, or such part thereof as they shall from time to time elect to purchase, at one-half (½) the average market price per share as hereinafter defined, each son to be entitled in the aggregate to one-half (½) of said Twenty Thousand (20,000) shares and stock dividends, unless the other should fail or refuse to purchase his full one-half (½) of the total. For the purpose of this paragraph average market price per share during any calendar month shall be the mean between the high and the low of the market price of said stock during the six (6) calendar months immediately preceding the date of the particular purchase, and the price at which my sons shall be entitled to purchase said stock from time to time shall be one-half (½) said average market price. The net proceeds of each such sale and the net cash dividends from said stock (or so much of the stock as shall not have been sold to my sons) after deduction of proper charges and expenses applicable thereto, shall be paid to the following, in the proportions indicated:

| | |
|---|---|
| The Mack Foundation (created by me during my lifetime) _____ | 45% |
| Endowment Fund, Westminster College, New Wilmington, Pa_____ | 20% |
| Bob Jones College, Cleveland, Tennessee_____ | 20% |
| Southwestern Presbyterian Sanatorium, Albuquerque, New Mexico_____ | 15% |

At the expiration of ten years from the date of my death, such part of said twenty thousand (20,000) shares of capital stock and stock dividends thereon as my said sons shall have failed or refused to purchase shall be sold to any purchaser or purchasers at the best price obtainable, as soon as conveniently may be and as soon as may be for the best interests of my estate, and the proceeds thereof shall be paid to the aforementioned institutions in the percentages indicated. My Trustees may, however, at their discretion, if so requested by my sons·or either of them, extend beyond said ten year period the time within which said sons or either of them may purchase the shares of stock then remaining unsold, but such extension shall in no event exceed a period of two years and six months.

On November 25, 1940, pursuant to paragraph eighth (b) of the will of his father, petitioner acquired five shares of the common capital stock of the G. C. Murphy Co. from trustees of the trust established by said paragraph. He paid to the testamentary trustees the sum of $170.30 or $34.06 per share for the stock.

The fair market value of said five shares on September 27, 1940, the date of the death of the decedent, was $78 per share.

On December 31, 1940, the petitioner sold the five shares of stock for the net amount of $346.12, or $69.224 per share.

The mean between the high and the low of the market price of the stock during the six calendar months immediately preceding the date of the purchase of the shares by the petitioner was $67.625 per share. For the six calendar months ended August 31, 1940, the mean between the high and the low of the market price of the shares was $69.50 per share.

In his income tax return for 1940 the petitioner reported a short term capital loss on the transaction as follows:

| | |
|---|---:|
| Cost or other basis | $360. 30 |
| Expenses of sale | 3. 26 |
| Total | 363. 56 |
| Gross sale price | 349. 38 |
| Loss to be taken into account | 14. 18 |

The respondent in his determination of the deficiency changed the basis from $360.30, or $72.06 per share, as reported, to $170.30, or $34.06 per share, by allowing as a basis only the amount of cash which petitioner paid to the trustees in exercising the option.

It is petitioner's contention that the basis of the shares is not the amount of the cash which he paid to the trustees, but that amount plus the fair market value of the option to purchase the shares from the trustees which he acquired under his father's will. The petitioner submits that, "since value at date of decedent's death is the criterion for fixing the value of the option, the formula would work out as follows.

| | |
|---|---:|
| Mean of high and low of the market price of said stock for six months,—$67.625÷2= | $33 8125 |
| Fair market value per share at date of death of decedent | $78. 00 |
| Fair market value ($78.00) less amount to be paid ($33.8125) equals value of option per share, that is | $44. 1875 |

On that basis, petitioner's loss on the subsequent sale of the five shares by him is determined as follows:

| | | |
|---|---:|---:|
| Adjusted basis per share: | | |
| Cash | $33. 8125 | |
| Plus value of option | 44. 1875 | |
| | | $78. 00 |
| Total for five shares | | 390. 00 |
| Net sales price | | 346. 12 |
| Short term capital loss | | 43. 88 |

Sections 111 and 113, Internal Revenue Code, provide in part as follows:

SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

  *   *   *   *   *   *   *

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

  *   *   *   *   *   *   *

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, * * * the basis shall be the fair market value of such property at the time of such acquisition. * * *

There are authorities which tend to support petitioner's contentions. In *Harry F. Robertson*, 5 B. T. A. 748. the taxpayer's mother-in-law deeded certain real estate to him for a price considerably less than its fair market value. We held that the taxpayer acquired the property in part by gift, to the extent of the excess of the fair market value over the amount paid, and in part by purchase, and that his basis for computing gain upon a subsequent sale of the property was its fair market value at the time of acquisition, which was prior to December 31, 1920.

In *May Rogers*, 31 B. T. A. 994, reversed on another point, 107 Fed. (2d) 304, it was held that the difference between the fair market value of shares which a mother transferred to her son and daughter and the amounts which they paid to the mother in consideration for the transfer constituted a gift and should be so treated in determining the basis to be used in the computation of their gain or loss upon a subsequent sale of the shares.

In *Robinson* v. *Commissioner* (C. C. A., 6th Cir.), 59 Fed. (2d) 1008, the principal stockholder of Libbey Glass Co. transferred to a valued employee as an inducement for him to remain with the company 200 shares of stock of the company at a price considerably less than market value. The court held, reversing 21 B. T. A. 907. that the basis for determining gain or loss on the subsequent sale of the shares by the employee was their fair market value at the time of acquisition. In its opinion the court said:

* * * Here the relationship between the parties, the personal interest shown by Mr. Libbey in the business career of the petitioner, the evident purpose of Mr. Libbey to educate the petitioner in the business, to the end that he might not only qualify himself for a position of executive responsibility, but that, in doing so, he might also create an investment estate for himself in the very company to which he was applying his talents, the conditions of the sale, and the admitted

value of the stock in excess, perhaps largely in excess, of the agreed price, demonstrate, in our opinion, that such excess value, whatever it may hereafter be stipulated to have been, was either intended as a gift by Mr. Libbey to the petitioner, induced by a genuine paternal interest in the petitioner's welfare, or as in the nature of compensation for past or future services in the interest of the Libbey Glass Company and Mr. E. D. Libbey personally. Compare: *Cohen* v. *Commissioner*, 31 F. (2d) 874 (C. C. A. 4) ; *Robertson* v. *Commissioner*, 5 B. T. A. 748 ; *Rosseter* v. *Commissioner*, 12 B. T. A. 254 ; Treasury Decision 3435 (II–1 C. B. 50). Whether regarded as a gift or as compensation, it is evident that the surplus value, over and above the actual price paid for the shares, must be taken into consideration in determining the capital base, and that such base is to be fixed at the true or market value at the time the stock was acquired.

Other similar cases are *G. Wildy Gibbs*, 28 B. T. A. 18; *Hawke* v. *Commissioner* (C. C. A., 9th Cir.), 109 Fed. (2d) 946, reversing in part 35 B. T. A. 784; and *Estate of Edward J. Connolly*, 45 B. T. A. 374; affd., 135 Fed. (2d) 64.

The cases referred to above support, either directly or indirectly, petitioner's contentions in the instant case.

The respondent relies principally upon the decision of the United States Supreme Court in *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496. The question there before the Court was the proper basis to be used in computing gain or loss on the sale of real estate which the taxpayer had acquired in a nontaxable transaction from a transferor who had acquired it by exercise of an option. The option was given in connection with a lease of the real estate executed in 1906. By March 1, 1913, the property had greatly increased in value. The option was exercised in 1916. The taxpayer there contended that its transferor acquired the property, or an interest therein, prior to March 1, 1913, and that its basis for computing the gain was the March 1, 1913, value. The Court ruled otherwise, holding that the taxpayer's transferor "acquired" the property not when the option to purchase was given in 1906, but when the option was exercised in 1916; and that taxpayer's basis was the option price and not the March 1, 1913, value. In its opinion the Court said:

We hold that the respondent acquired the property on November 30, 1916. The option itself was property, and doubtless was valuable. If it had been assignable, and the lessee had sold it at a profit, taxable gain would have resulted from the sale. But the option is admittedly not the same property as the land. So conceding, the respondent still insists that ownership of the option created an interest in the land. This would not be true of a bare option unconnected with a lease; but we are told that because embodied in the lease the agreement became a covenant real and gave the lessee a species of interest or property in the land. The weight of authority is to the contrary, and no cited California decision supports the position. But even if we should agree that a lessee-optionee acquires, by virtue of the instrument, an equitable interest in the land it would not follow that, within the contemplation of the revenue acts, he acquires the property at the date of the option rather than at the date of conveyance. The word "acquired" is not a term of art in the law of property but one in common use. The plain import of the word is "obtained as one's

own." Language used in tax statutes should be read in the ordinary and natural sense. In the common and usual meaning of the term the land was acquired when conveyed to the respondent's predecessor.

\* \* \* Neither the land nor the gain so accruing before March 1, 1913, became the lessee's property until 1916 when it took up the option.

\* \* \* The capital asset, sale of which resulted in taxable gain, was the land. This was not an asset of the taxpayer prior to the exercise of the option. We think it clear that there was no combination of two capital assets, (the option and $200,000 of cash), to form a new capital asset (the land) which was subsequently sold at a profit. \* \* \*

The petitioner submits that the above cited case turned on the point that an option is not an interest in land and that therefore the opinion of the Court is not in point in this proceeding. We are of the opinion, however, that it is.

What the petitioner acquired under the will of his father was an option to purchase a part of the 20,000 shares of stock here in question. The petitioner contends that that option had a value and cites numerous Pennsylvania decisions to that effect. See *Bayer* v. *Walsh*, 166 Pa. 38; 30 Atl. 1039; *In re Fleming's Estate*, 184 Pa. 80; 39 Atl. 27; and *In re Dilworth's Estate*, 243 Pa. 475; 90 Atl. 356. What the petitioner sold here was not the option to purchase. That was personal to the petitioner. It could not be transferred. What he did sell was the five shares of stock which he purchased on November 25, 1940. There is no question as to the amount which the petitioner paid for those shares. It was $170.30, or at the rate of $34.06 per share.

It seems plain that by reason of the purchase and sale of the five shares in 1940 the petitioner realized a gain of $175.82. Surely his bank account would reflect the increase.

In the light of these facts it seems decidedly unrealistic for the petitioner to claim that he had a loss from the transaction. The loss can be computed only by adding to the cost basis an assumed value for the option to purchase, which was, of course, exhausted in part by the purchase of the five shares. The petitioner contends that the basis for computing gain is made up of the amount which he paid to the trustees and of an aliquot part of the value to him of the option. We do not think, however, that the statute warrants such an assumption.

*Merrell* v. *Evans*, 8 Fed. (2d) 431, concerned the proper basis to be used by a taxpayer on the sale of securities purchased by him from a testamentary trust of which he was beneficiary. The trust provided that any beneficiary desiring to sell stock of this kind must first offer it to the other beneficiaries at par. On the date of the purchase by the taxpayer the stock was of a higher value than par; consequently, the taxpayer claimed that his basis should be higher than the actual purchase price. He claimed that the privilege of purchasing at par had a value and that such value should be added to the basis of cost.

The court denied this contention, saying that it was unable to see the materiality of the privilege which petitioner had under the will of purchasing at par in case another beneficiary chose to sell.

We sustain the respondent's determination.

Reviewed by the Court.

*Decision will be entered for the respondent.*

HILL, *J.*, dissents.

MURDOCK, *J.*, dissenting: I can not agree that the petitioner's basis for gain or loss on the stock purchased by him from the testamentary trustee was no more than the cash which he paid. He acquired some property of value by bequest from his father. Property acquired by bequest has its own basis of value at the time acquired. Sec. 113 (a) (5). The property acquired by bequest from his father was used or ripened in the acquisition of the stock, and in one way or another the basis of the stock for future gain or loss was affected thereby.

If the right to purchase had been transferable and had been sold by the petitioner to X, clearly that sale could give rise to gain or loss, and if X had exercised the right, his basis for the stock would not be limited to the cash paid to the trustee. Thus, we can not ignore the fact that the petitioner here received some property of value by bequest from his father which has some effect upon his basis for the stock.

MELLOTT, ARNOLD, and TYSON, *JJ.*, agree with this dissent.