John J. Kalbac and Dorothy Kalbac v. Commissioner. John G. Kiske and Clara Kiske v. Commissioner.
Kalbac v. Commissioner
Docket Nos. 79794, 79795.
United States Tax Court
T.C. Memo 1961-47; 1961 Tax Ct. Memo LEXIS 299; 20 T.C.M. (CCH) 262; T.C.M. (RIA) 61047; February 24, 1961
*299 Under the will of the president and principal stockholder of a corporation by whom they had been employed for many years, petitioners were granted an option to purchase certain shares of the corporation's stock at prices which the president of the corporation regarded as favorable to petitioners. Petitioners exercised the option to purchase the stock after the death in 1952 of the maker of the will. In 1954, the corporation was liquidated and petitioners received for their stock considerably in excess of the amount which they paid to the executors of the estate. Held, that the basis for the determination of the long-term capital gain upon the liquidation of their stock is the amount which petitioners paid to the estate in the exercise of their option to purchase under the will. J. Gordon Mack, 3 T.C. 390, affd. 148 F. 2d 62 (C.A. 3), certiorari denied 326 U.S. 719, followed. Donald E. Fahey, Esq., 314 N. Broadway, St. Louis, Mo., for the petitioners. H. Tracy Huston, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in individual income tax determined by respondent as follows: Docket No.
Petitioner
Year
Deficiency
79794
John J. Kalbac and
Dorothy Kalbac
1954
$26,250
79795
John G. Kiske and
Clara Kiske
1954
26,250
*301 In Docket No. 79794 the deficiency results from one adjustment made to the taxable income shown on the return. That adjustment was: "(a) Gain on liquidation of James Mulligan Printing Company increased $55,494.33." This adjustment is explained in the deficiency notice as follows: (a) On your income tax return for the taxable year 1954, your reported taxable long term capital gains in the amount of $25,804.04 of which amount $24,853.89 resulted from the liquidation of 90 shares of your stock of James Mulligan Printing Company. You have agreed that the reported proceeds of said liquidation should be increased in the amount of $5,988.68 as a result of your understatement of the fair market value of good will of said corporation in the amount of $5,400.00, the understatement of the fair market value of life insurance received in the amount of $83.01, and the overstatement of liabilities assumed in the amount of $505.67. On your return, you claimed a basis for said 90 shares of stock in the amount of $147,088.94. The basis of said stock has been reduced to $42,088.95, since you paid $7,500.00 for one share of the stock and purchased the remainder of the stock from the Estate of Frances *302 [Francis] J. Mulligan for $34,588.95. The recomputation of taxable long term capital gain which you received from the liquidation of James Mulligan Printing Company is as follows: [Here follows the computation, unnecessary to copy here.] In Docket No. 79795, John G. Kiske and Clara Kiske, a similar adjustment to the above was made by the Commissioner in his determination of the deficiency. The Commissioner explained this adjustment in his deficiency notice in a similar manner to his explanation of the adjustment made in Docket No. 79794. The petitioners in both docket numbers assign error as to the amounts of long-term capital gains which the Commissioner determined that they received on liquidation of James Mulligan Printing Company. Findings of Fact Some of the facts have been stipulated and the facts as stipulated are incorporated herein by this reference. John J. and Dorothy Kalbac are husband and wife residing in St. Louis, Missouri. They filed their joint income tax return for the taxable year 1954 with the district director of internal revenue at St. Louis. John G. and Clara Kiske are husband and wife residing in St. Louis, Missouri. They filed their joint *303 income tax return for the taxable year 1954 with the district director of internal revenue at St. Louis. Prior to his death on June 10, 1952, Francis J. Mulligan was the president of the James Mulligan Printing Company, hereinafter referred to as the Company, a corporation organized and existing under the laws of the State of Missouri. Mulligan owned at the time of his death 198 of the 200 outstanding shares of the capital stock of the Company. Petitioners John J. Kalbac and John G. Kiske, hereinafter sometimes referred to as petitioners, on June 10, 1952, and for many years prior thereto were employees of the Company. The last will and testament of Mulligan was admitted to probate on June 26, 1952, and provided, among other things, as follows: ITEM TWELVE: To my faithful employee and associate, John Kiske, if he be in the employ of the James Mulligan Printing Company, a Missouri corporation, at the date of my death, I hereby give and grant an option to purchase from my estate ninety (90) shares (this to include the one share now in his name) of the capital stock of the James Mulligan Printing Company for a sum equal to one-half (1/2) of any debt which I may owe said corporation *304 at the time of my death, but said sum or purchase price shall in no event be less than Fifteen Thousand Dollars ($15,000.00) nor more than one-half (1/2) of the book value of said stock at the date of the exercise of this option. The latter sum I feel will be the real value of said stock after my death. The purchase or option price of said stock may be paid in one cash sum or in monthly installments at the rate of at least One Hundred Fifty Dollars ($150.00) per month, evidenced by the unsecured note or notes, without interest, of said John Kiske, and such payment or payments may be made to my Executors, my Trustees, or said James Mulligan Printing Company, whichever in the opinion of my Executors shall be more convenient for my estate. In the event said John Kiske predeceases me or is not in the employ of said Company, or fails to exercise said option within thirty (30) days after my death, then John Kalbac shall have the option to purchase said stock under the same conditions. ITEM THIRTEEN: To my faithful employee and associate, John Kalbac, if he be in the employ of the James Mulligan Printing Company at the date of my death, I hereby give and grant an option to purchase from *305 my estate ninety (90) shares (this to include the one share now in his name) of the capital stock of James Mulligan Printing Company, a Missouri corporation, for a sum equal to one-half (1/2) of any debt which I may owe said corporation at the time of my death, but said sum or purchase price shall in no event be less than Fifteen Thousand Dollars ($15,000.00) nor more than one-half (1/2) of the book value of said stock at the date of the exercise of this option. The latter sum I feel will be the real value of said stock after my death. The purchase or option price of said stock may be paid in one cash sum or in monthly installments at the rate of One Hundred Fifty Dollars ($150.00) per month, evidenced by the unsecured note or notes, without interest, of said John Kalbac, and such payment or payments may be made to my Executors, my Trustees, or said James Mulligan Printing Company, whichever in the opinion of my Executors would be most convenient for my estate. In the event that said John Kalbac predeceases me or it not in the employ of the James Mulligan Printing Company, or fails to exercise said option within thirty (30) days after my death, then John Kiske shall have the option *306 to purchase said stock under the same conditions. ITEM FOURTEEN: Should either or both of the options granted by Item Twelve and/or Item Thirteen hereof be not exercised by John Kiske or John Kalbac for any reason whatsoever, then such undisposed of stock in the James Mulligan Printing Company shall pass and be administered as a part of the residue of my estate, free of any option. In the event that either or both John Kiske and John Kalbac shall exercise the foregoing option or options on said capital stock of the James Mulligan Printing Company, then, upon such exercise, he or they shall become the owner of the stock referred to, regardless of the fact that the same may or may not be delivered or transferred on the books of the corporation, and my Executors, or anyone claiming by or through them, shall be without right or authority to demand the transfer thereof to anyone other than to the optionee or optionees exercising such option or options, and shall be without right or authority to make any claim or demand against or to recover any sum from said corporation because of its refusal to transfer said stock to anyone other than said optionee or optionees. The optionee or optionees *307 (but only in the event a majority of all the stock of said corporation has been acquired pursuant to the foregoing options) shall have the power of complete control and management of the business of said corporation, and my Executors, or anyone claiming by or through them, shall be without right or authority to in any way, by court action or otherwise, question or interfere with said power of complete management or control. At the date of his death Mulligan owed the Company the sum of $69,177.89 on open account. On July 1, 1952 Kalbac exercised the option granted to him in Item Thirteen of Mulligan's will. He then paid to the Mulligan estate the sum of $34,588.94, for which he received from the estate 89 shares of the capital stock of the Company. Likewise, on July 1, 1952, Kiske exercised the option granted to him in Item Twelve of the will. He then paid to the estate the sum of $34,588.94, for which he received from the estate 89 shares of the capital stock of the Company. Sometime prior to June 10, 1952, Kalbac and Kiske each purchased one share of the capital stock of the Company for which each paid the sum of $7,500. On December 23, 1954, Kalbac surrendered his 90 shares *308 of stock in the Company to the Company and received a liquidation dividend from the corporation in the amount of $202,785.40. Similarly, Kiske surrendered on the same date his 90 shares of stock and received a liquidation dividend of $202,797.69. The fair market value of each share of Company stock at the time of Mulligan's death on June 10, 1952, was $1,250 per share. Petitioners were long-time business associates, employees, and close personal friends of Mulligan. Through the years of their association with him, Mulligan treated each petitioner with a close personal regard over and above ordinary employer-employee relationship in that: He employed each of them when they were very young; he taught them not only the ways of his business but also the ways of the business world generally, guided and advised them in their personal growth and maturity; through the years promoted them to positions of full responsibility for his business; and, in the later years of his life, Mulligan was in poor health and left most business decisions to their responsibility with statements to them that after his death the business would be theirs, or words to that effect. Opinion BLACK, Judge: It *309 is the contention of petitioners that in Mulligan's will they were each bequeathed 89 shares of stock in the Company and that their basis upon the liquidation of the corporation which took place in 1954 was its fair market value at the date of Mulligan's death. It has been stipulated that the fair market value of each share of stock of the Company at the time of Mulligan's death was $1,250. Petitioners contend that the basis for their 89 shares of stock in the liquidation should be determined under section 1014, Internal Revenue Code of 1954, the applicable portion of which reads as follows: SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT. (a) In General. - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its *310 value at the applicable valuation date prescribed by those sections. (b) Property Acquired from the Decedent. - For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent: (1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent; Respondent, on his part, contends that petitioners were not bequeathed any of the capital stock of the Company under decedent's will; that what they were in fact bequeathed under the will was an option to acquire 89 shares of stock each from decedent's estate after his death by paying to the corporation the amount of the indebtedness which Mulligan owed the corporation at the time of his death; that petitioners exercised the option granted in decedent's will and each paid to the estate the sum of $34,588.94 as the purchase price for the 89 shares of stock which he received. Therefore, contends respondent, petitioners' basis for the stock was its cost to them under the option which they exercised and their basis is determined, not by section 1014, 1954 Code, as petitioners claim, but is determined by section 1012, 1954 Code, which *311 reads as follows: SEC. 1012. BASIS OF PROPERTY - COST. The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). The cost of real property shall not include any amount in respect of real property taxes which are treated under section 164(d) as imposed on the taxpayer. We agree with respondent. We fail to see where petitioners acquired any shares of stock under Mulligan's will. What they acquired under the will was an option to purchase 89 shares of the stock of the corporation. They already owned one share of stock each; as to the cost to them of this one share, there is no dispute. An option to acquire property by purchase is certainly not the property itself. Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496. We have no doubt that Mulligan in his will intended to grant petitioners the option to purchase the stock at prices which he thought were favorable to them. It is clear from the evidence that petitioners had been faithful and trusted employees *312 of the Company for a long time and that Mulligan, who owned all the stock of the corporation except two shares, esteemed very highly the value of the services of petitioners. But these facts do not change an option to purchase the stock to a bequest of the stock. Respondent relies, as a case in point in support of his contention, on J. Gordon Mack, 3 T.C. 390, affd. 148 F. 2d 62 (C.A. 3), certiorari denied 326 U.S. 719. In that case, under the will of his father, the taxpayer was given an option to purchase within a limited time certain shares of stock from the testamentary trustees at approximately one-half of their fair market value at the time of purchase. Exercising the option granted by his father under the will, the taxpayer purchased five of such shares from the trustees. Later, he sold them at a price considerably in excess of what he had paid for them in the exercise of the option which had been granted him under the will. The taxpayer, in his income tax return, claimed as a basis for the shares their fair market value at the date of the death of his father. The Commissioner rejected this basis and in his deficiency notice determined *313 that the taxpayer's basis of cost for the shares was what he paid for them when he purchased them under the option. We sustained the Commissioner on the authority of Helvering v. San Joaquin Fruit & Investment Co., supra.The taxpayer appealed our decision to the Third Circuit and we were affirmed. The court, in affirming us, based its affirmance on Helvering v. San Joaquin Fruit & Investment Co. and, among other things, said: The taxpayer contended that its transferor had acquired the property, or an interest therein, prior to March 1, 1913, and that its basis for computing the gain was the March 1, 1913, value. The Supreme Court held to the contrary, deciding that the taxpayer's transferor acquired the property, not when the option to purchase was given in 1906, but when it was exercised in 1916, and further determined that the taxpayer's basis was the price paid on the exercise of the option, and not the value as of March 1, 1913. In this regard, the court said: "The capital asset, sale of which resulted in taxable gain, was the land. This was not an asset of the taxpayer prior to the exercise of the option. We think it clear that there was no combination of two capital *314 assets (the option and $200,000 of cash), to form a new capital asset (the land), which was subsequently sold at a profit." 297 U.S. at page 500, 56 S. Ct. at page 571, 80 L. Ed. 824. In view of the foregoing authority, discussion of the numerous cited cases from other state and federal courts, would be a work of supererogation. In their brief petitioners cite in support of their contention several cases which were decided prior to the San Joaquin Fruit & Investment Co. case and prior to our decision in J. Gordon Mack and its affirmance by the Third Circuit. We do not think these cases are in point, especially in view of the later decisions above cited. Therefore, we think it is unnecessary to discuss them. We decide this issue of the basis to be used in favor of the Commissioner. Decisions will be entered for the respondent.