ZEB V. GRUBB, TRADING AND DOING BUSINESS AS GRUBB MOTOR COMPANY, v. FORD MOTOR COMPANY, INC.

(Filed 11 December, 1935.)

1. **Evidence J a—Parol evidence of separate, subsequent agreement in accord with original written contract, held competent.**

   Plaintiff's contract with defendant motor company provided that upon the termination of the agency contract defendant might repurchase from plaintiff dealer, at its option, products of defendant in plaintiff's possession at the price paid, plus freight, and that the contract might not be enlarged, varied, or modified except in writing. Plaintiff offered evidence of a parol agreement entered into more than a year thereafter in which plaintiff agreed to resign his agency and defendant agreed to repurchase accessories and equipment in plaintiff's possession at seventy-five per cent of list price. *Held:* Evidence of the separate, subsequent parol agreement in accord with the original written contract was competent.

2. **Principal and Agent C b—Agent held to have acted within apparent scope of authority and principal was bound by his agreement.**

   Plaintiff's automobile agency contract provided that it might not be enlarged, varied, modified, or canceled except by an instrument executed by defendant motor company's president, vice-president, secretary, or assistant secretary. Plaintiff testified that in consequence of differences between him and defendant company, he went to defendant's branch office, and was told that the matter would be taken up by defendant's zone manager, that thereafter he entered into an agreement with the zone manager under which he agreed to resign his agency and defendant company agreed to repurchase equipment on hand at a stipulated price, that he mailed his resignation to the same branch office of defendant, which accepted same on behalf of defendant company. *Held:* Defendant's zone manager had apparent authority, under plaintiff's evidence, to enter the agreement for the resignation of the agency and the repurchase of equipment by defendant, and defendant company's motion to nonsuit on the ground that the zone manager was without authority to make the agreement should be denied.

**3. Contracts A d—Plaintiff's evidence held to show sufficient consideration
to support contract sued on.**

Plaintiff's automobile agency contract provided that it might be termi-
nated at any time at the will of either party. Plaintiff declared on a
contract under the terms of which he agreed to resign his agency, and
continue to service cars made by defendant until defendant could obtain
another dealer, etc., in consideration of defendant's agreement to repur-
chase equipment on hand. Plaintiff testified that he resigned his agency
and performed all other acts to be done by him under the agreement.
*Held:* Defendant's motion to nonsuit on the ground that as the agency
contract was terminable at will, there was no consideration sufficient to
support the contract declared on, should have been denied, since plaintiff's
evidence discloses some detriment suffered by plaintiff or benefit accruing
to defendant.

**4. Trial D a—**

On a motion to nonsuit, the evidence must be considered in the most
favorable aspect for plaintiff.

APPEAL by plaintiff from *McElroy, J.,* at May Term, 1935, of DAVID-
SON. Reversed.

Plaintiff, a former local agent and dealer in products of the defendant
motor company, brings this action for damages for breach of contract.
He offered evidence tending to show that he had been engaged since
1 June, 1932, in the automobile business in Lexington, under a written
contract with the defendant; that in August, 1933, he entered into an
oral agreement with defendant through its zone manager to the effect
that if he would resign his agency and cancel his contract therefor, the
defendant would repurchase from him at seventy-five per cent of list
price the parts, accessories, and other equipment which had been sold to
him by defendant; that he did so resign and cancel his agency contract,
but defendant failed and refused to repurchase said property, whereby
he sustained a loss.

The written contract of agency contains the following provisions:

"(c) This agreement may be terminated at any time at the will of
either party by written notice to the other party given either by regis-
tered mail or by personal delivery, and such termination shall also oper-
ate to cancel all orders theretofore received by Company and not deliv-
ered."

"(d) Upon termination of this agreement Company may, at its option,
repurchase from Dealer all or any part of Company's products in
Dealer's possession, and Dealer agrees to sell such products to Company
at the price paid therefor plus freight, but less any liens or encum-
brances thereon. And Dealer hereby grants Company the right to enter
the premises of Dealer upon termination of this agreement and to take

possession of all or any part of said products upon tender of the purchase price thereof, determined as above."

"(h) The terms of this agreement may not be enlarged, varied, modified, or canceled by any agent or representatives of Company, except by an instrument in writing executed by the President, Vice-President, Secretary, or Assistant Secretary of Company, and Company will not be bound by any alleged enlargement, variation, modification, or agreement not so evidenced."

Plaintiff testified that in consequence of some differences that had arisen between him and defendant he went to Norfolk, Virginia, in August, 1933, to see "Mr. Wood" to discuss the matter of his agency.

That Mr. Wood told him he was busy and he would send Mr. Hancock to see him; that Mr. Hancock, who was defendant's zone manager in charge of this territory, came to see him several times and talked with him about the way to conduct the business, about service and repairs, about demonstrators and salesmen and reports, and general survey of the way to operate the Ford business; that on 16 August, 1933, Mr. Hancock "asked me if I would resign, and I told him I would if they would take the parts and equipment off my hands—that I would have too large a loss if I didn't dispose of them. He said if I would continue to service his Ford cars and buy Ford parts from them and look after the cars in the territory until they got a new dealer, they would take them off my hands when they got a new dealer here. The price was to be cost for parts and seventy-five per cent of list price for equipment. I agreed to that." That thereupon Mr. Hancock wrote out the resignation and he signed it and gave it to him. The resignation is in the following words: "Grubb Motor Co., Authorized Ford Dealer, Phone 485, Lexington, N. C., 8-16-33. Ford Motor Company, Norfolk, Va. Gentlemen: We hereby notify you of the cancellation and termination of our Ford Sales Agreement with your Company, dated 1 June, 1932, in accordance with paragraph 9, section E of that agreement, such cancellation to be effective upon receipt of this notice by you. Very truly yours, Grubb Motor Co., by Zeb V. Grubb."

Plaintiff further testified that he in all respects complied with the terms of the agreement on his part; that defendant appointed Wright Motors, Inc., new dealer for the territory, but failed and refused to repurchase the parts and equipment; that thereafter he tried to dispose of said property and put up a sign: "Ford-Service—Genuine Parts, Equipment"—"Former Ford Dealer," but that defendant stopped him by an injunction from the United States Court for infringement of registered trademark "Ford"; that thereafter he instituted this suit.

At the close of plaintiff's evidence, the court sustained motion to nonsuit, and from judgment thereon plaintiff appealed.

*Don A. Walser and Martin & Brinkley for plaintiff.*
*Phillips & Bower and Cansler & Cansler for defendant.*

DEVIN, J.   The defendant contends the judgment of nonsuit should be sustained on one of three grounds:

(1) That evidence of the oral contract relied on was incompetent.

(2) That the person with whom plaintiff alleges he orally contracted was not authorized to make such a contract.

(3) That the agency contract being determinable at will, there was no consideration to support the oral agreement.

1. The oral agreement to repurchase the Ford parts was entirely separate and apart from the written contract of agency, and did not vary, contradict, or modify any of its terms.   The oral agreement was made more than a year later than the agency contract and was in accord with its terms.   It was provided in the agency contract that "upon termination of this agreement the company may, at its option, repurchase from dealer, all or any part of company's products in dealer's possession.   And the dealer agrees to sell such products to the company at the price paid therefor plus freight."

The plaintiff testified in effect that defendant agreed subsequently by parol to exercise the option given it in the written contract.

It is well settled that the rule that parol evidence will not be admitted to contradict or modify a written contract does not apply when the modification takes place after the execution of the contract.   *Freeman v. Bell,* 150 N. C., 146.   Nor is it incompetent to prove by parol evidence another and subsequent agreement with respect to the same subject matter.   The principle excluding parol evidence has no application to subsequent agreements which change or modify the original contract.   *Mfg. Co. v. McPhail,* 181 N. C., 205; *McKinney v. Matthews,* 166 N. C., 580.

2. The rule is well established that one is bound by the acts and agreements of his agent while the agent is acting within the scope of his authority or agency, and equally so when the agent is acting within the apparent scope of such authority or agency.

Here plaintiff testifies that the defendant's Mr. Hancock, who made the agreement for the defendant, was the zone manager in charge of the territory; that plainitff went to defendant's Norfolk branch to see "Mr. Wood" about plaintiff's dealership and was in effect told that Mr. Hancock had been designated to handle it; that this was a matter with reference to the manner of conducting and the continuance of his dealership.

The letter of resignation relied on by defendant was addressed to the Norfolk office of the defendant Ford Motor Company, and from this fact the reasonable inference may be drawn that this was the same office to

which plaintiff had gone and by which the matter had been referred to "Mr. Hancock."

In *R. R. v. Lassiter,* 207 N. C., 413, *Clarkson, J.,* quotes from *R. R. v. Smitherman,* 178 N. C., 595, as follows: "While as between the principal and agent the scope of the latter's authority is that authority which is actually conferred upon him by his principal, . . . such . . . restrictions do not affect third persons ignorant thereof, and as between the principal and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses. . . . The authority must, however, have been actually apparent to the third person, who . . . must have dealt with the agent in reliance thereon, in good faith and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business." *Bobbitt v. Land Co.,* 191 N. C., 323; *Gallop v. Clark,* 188 N. C., 186.

Under the circumstances testified to by plaintiff, he was justified in dealing with Hancock as the authorized agent of Ford Motor Company, or as acting within the apparent scope of his authority.

3. While the written contract constituting plaintiff a Ford dealer contains the provision, "This agreement may be terminated at any time at the will of either party by written notice to the other," the continuance of this contract seems to have been regarded by the parties, according to plaintiff's evidence, as of some value, and plaintiff's resignation of sufficient benefit to the defendant, or detriment to the plaintiff, to constitute consideration for the oral agreement sued on.

The oral agreement consisted of mutual promises, each to the other, which the plaintiff testifies he performed on his part not only with respect to the surrender of his contract, but also as to the performance of other acts to be done under the agreement.

The principle is stated in *Institute v. Mebane,* 165 N. C., 644:

"A valuable consideration in the sense of the law may consist either in some right, interest, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. Courts will not ask whether the thing which forms the consideration does in fact benefit the promisee or a third party, or is of any substantial value to anyone. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made, as consideration for the promise made to him."

To the same effect is *Exum v. Lynch,* 188 N. C., 392; *R. R. v. Ziegler,* 200 N. C., 396; *Ex parte Barefoot,* 201 N. C., 393; *Warren v. Bottling Co.,* 204 N. C., 288; *Grier v. Weldon,* 205 N. C., 575.

In *Ford Motor Co. v. Kirkmyer,* 65 Fed. (2d), 1001, cited by counsel for defendant, *Circuit Judge Parker,* in a well considered opinion, construed a dealership contract of the Ford Motor Company and reached the conclusion in that case that the contract being terminable at will could not form the basis of an action for damages because of lack of consideration and mutuality. But the facts upon which that opinion was based are distinguishable from those in the case at bar, and do not militate against the position here taken.

The rule is that on a motion for nonsuit the plaintiff's evidence must be considered in its most favorable aspect. Viewing it in this light, we conclude that upon none of the grounds urged by defendant can the nonsuit be sustained.

The plaintiff's evidence was sufficient to have entitled him to have it submitted to the jury with appropriate instructions.

The judgment of nonsuit is

Reversed.