HELEN S. DELONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6423. Promulgated May 27, 1946.

*John F. Greaney, Esq.*, for the petitioner.
*Robert H. Kinderman, Esq.*, for the respondent.

OPINION.

Hill, *Judge*: The question here is how much, if any, capital gain petitioner realized on the transfer on September 20, 1940, of 3,409 shares of common stock. There is no dispute as to the value of her receipts as a result of this transfer or as to the basis of 865 shares which she had acquired by purchase at $100 per share The difficulty arises with respect to the 2,544 shares which were the subject of a testamentary disposition by petitioner's husband, C. J. Delone. The pertinent provisions of Delone's will and of the agreement under which these shares were transferred are fully set out in our findings of fact.

The principal conflict between the parties is as to what interest in the shares was acquired by petitioner under her husband's will. The respondent's position, and the basis upon which the deficiency was determined, is that petitioner acquired by bequest only 1,851 shares of Revonah common stock; and that the 693 shares were received by the three individuals as a legacy under the will and, since they were not received by purchase from petitioner, they are not includible by her in the basis of the stock transferred. Under this view, she gained $39,825 on the transfer of the 3,409 shares. Petitioner's theory is that she received the entire 2,544 shares subject to an option and that, since the appraisal for Federal estate tax purposes was $125 per share and they were all transferred under the agreement, the full value of all the shares is the basis. This calculation results in a loss of $46,800. In the alternative, she contends that the will gave her at least an interest in each of the 2,544 shares equal to the $100 option price and that the basis should be this amount multiplied by the total number of shares. A gain of $16,800 is the result under this theory. In conjunction with her alternative contention, petitioner argues that the basis should be increased by the proportionate amounts of the Federal estate and state inheritance taxes which may be charged to the 3 individuals as legatees of a $25 interest in each of the 2,544 shares, since this liability was assumed by her in the transfer agreement and paid by the estate, of which she was the residuary legatee.

The respondent's view of the effect of the will rests on 2 premises. The first is that under the terms of the will the 3 individuals were to receive a legacy which would reduce petitioner's bequest to something less than a 100 percent interest in any of the 2,544 shares. The second premise is that the transfer agreement accomplished a partition and redistribution of legacies which determines what petitioner and the 3 individuals took by inheritance.

Our interpretation of the will, based on its clear and express terms and on the decisions of the Pennsylvania Supreme Court in *Bayer* v. *Walsh*, 166 Pa. 38; 30 Atl. 1039; *In re Fleming's Estate*, 184 Pa. 80;

39 Atl. 27; and *In re Dilworth's Estate*, 243 Pa. 475; 90 Atl. 356, is that petitioner took title to the entire 2,544 shares of Revonah stock, this title being encumbered by an option, and that the option constituted a valuable, though contingent and personal, bequest to the 3 individuals. In the *Dilworth* case, cited *supra*, the court found that the will there involved contained "an express provision * * * that only in event of refusal to accept the option would [title] pass" to the legatee, and until that time it remained in the executrix. The will here did not contain any such provision, but, to the contrary, specifically provided that "she sell" the Revonah stock to the optionees. In view of the lack of reference to the coexecutor in this connection, it appears clear that the direction to sell was to petitioner as legatee and not as executrix. The clear intent of decedent was accomplished by bequeathing the stock to petitioner, subject to the option in the 3 individuals.

Section 113 (a) (5) of the Internal Revenue Code provides that the basis of "the property * * * acquired by bequest * * * shall be the fair market value of such property at the time of such acquisition." Section 19.113 (a) (5)-1 (c) of Regulations 103 establishes a presumption that the fair market value of the property as of the date of death of the decedent is the value as appraised for the purpose of the Federal estate tax. No evidence was offered to refute this presumption. Common stock of Revonah was appraised for this purpose at $125 per share, and petitioner contends that this is the basis of each of the 2,544 shares in her hands. It may be observed, however, that the appraisal was of *unencumbered* common stock, and petitioner received under the will common stock subject to an option to buy at $100 per share which was never appraised for estate tax purposes. Thus, we must consider what, if any, effect the option had upon the fair market value of the stock when unencumbered.

The depressive effect of similar restrictions upon alienation of property has many times been considered by the courts in fixing the property's value. The rationale of the cases seems to be the existence, or lack of it, of a presently exercisable right in another to compel the property holder to sell at a fixed value. Where a stockholder has merely agreed to offer stock on certain terms *if* he should desire to sell, such an agreement does not restrict the value for tax purposes to the agreement price. *Halsted James*, 3 T. C. 1260; affd., 148 Fed. (2d) 236, and numerous cases cited therein. *Krauss* v. *Commissioner*, 140 Fed. (2d) 510; *Raymond J. Moore*, 3 T. C. 1205; *Estate of Virgil D. Giannini*, 2 T. C. 1160; affd., 148 Fed. (2d) 285. Likewise, an option to buy shares of stock at book value sometime in the future does not limit the value for gift tax purposes to book value at the

time of the gift. *Commissioner* v. *McCann*, 146 Fed. (2d) 385, reversing 2 T. C. 702; *C. T. Kline*, 44 B. T. A. 1052; affd., 130 Fed. (2d) 742; certiorari denied, 317 U. S. 697. Where, however, on the date as of which value is to be determined, there is a binding, irrevocable option, specifically enforceable, which leaves the shareholder no choice to refrain from selling at the stipulated price, the market value of stock so encumbered is the option price. *Helvering* v. *Salvage*, 297 U. S. 106; *Commissioner* v. *Bensel*, 100 Fed. (2d) 639; *Lomb* v. *Sugden*, 82 Fed. (2d) 166; *Wilson* v. *Rogers*, 57 Fed. (2d) 682.

We think the last stated rule applies to the instant case. Petitioner enjoyed no freedom of determination as to whether, when, or at what price to sell the shares of Revonah stock which she received under the will. She could only require of the optionees that they tender to her the option price and show that they had tendered to Hart a minimum price of $100 per share for his 310 shares. Since they were in a position to realize a substantial profit on each of the 2,544 shares, and also a like profit per share on the Hart shares if purchased at $100 per share, there is little likelihood that over-all financial arrangements could or would not be made to enable the 3 individuals to make the offer of $100 per share for the Hart stock. Cf. *C. T. Kline*, *supra*. As was observed by the court in *Commissioner* v. *McCann*, *supra:*

\* \* \* An option immediately exercisable—a "call"—will, however, ordinarily be regarded as a limit upon market value, or any other value however ascertained or ascertainable, because the person having the option, if well advised, will exercise it as soon as the value rises above the option price. If there are reasons why he will not then do so, he must prove them who wishes to discard the option as the measure. \* \* \*

We conclude that $100 per share is the fair market value, and basis, of each share of stock as petitioner received it under her husband's will.

The cases of *J. Gordon Mack*, 3 T. C. 390; affd., 148 Fed. (2d) 62, and *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496, cited by petitioner as supporting her contention, do not present the question here involved.

We come now to a consideration of the effect of the transfer agreement. The respondent, relying on *M. L. Long*, 35 B. T. A. 95, and *Lyeth* v. *Hoey*, 305 U. S. 188, contends that the agreement was a readjustment of legacies, so that petitioner "acquired by bequest" from her husband 1,851 shares of Revonah stock free and clear, and the 3 individuals "acquired by bequest" 693 shares free and clear. Petitioner's view is that the agreement is independent of the testamentary distribution and that the 3 individuals acquired the 693 shares "by purchase" from her and not "by bequest" from her husband.

We agree with petitioner on this point. The agreement between petitioner and the 3 individuals was not confined to the transfer of peti-

tioner's title to the 2,544 shares of stock in Revonah acquired by her under the will, but it also embraced the sale by her of 865 shares of Revonah stock which she had acquired independently of the will. It is apparent that the purpose of the 3 individuals in effecting the agreement in question was to acquire all of petitioner's stock in Revonah and not to define or adjust legacy rights between the parties to the agreement. The will defined those rights with a certainty that eliminates any question with respect thereto. To effectuate the agreement Revonah was recapitalized and, in consideration of $170,000 in cash and preferred stock of Revonah of the value of $187,700, petitioner transferred all of her then rights in Revonah stock totaling 3,409 shares as follows: 693 shares to the 3 individuals and 2,716 shares to Revonah. Also, under such agreement, petitioner assumed the payment of Federal and state inheritance and estate taxes attributable to the legacy of the 3 individuals.

We hold that the consummation of the agreement effected a sale by petitioner of her entire stockholdings in Revonah, consisting of 3,409 shares, for the consideration therein named. Specifically, we hold that the 693 shares were acquired by the 3 individuals by purchase from petitioner and were not received by them as a legacy under the will.

There remains for consideration only petitioner's claim that the basis for computing gain on the sale of the stock should include the amounts of Federal estate and state inheritance taxes apportionable to the legacies of the 3 individuals. There is no controversy here as to such amounts being so apportionable under the law of Pennsylvania. Those liabilities were assumed by petitioner in the transfer agreement and she contends that she actually bore these burdens when the estate paid the taxes in full, since she was legatee of the entire remaining portion of the estate. Respondent objects to the adjustment only on the ground that petitioner has not proved payment of the taxes during the taxable year here involved. We think that the amounts of the tax liabilities assumed should be reflected in the computation of petitioner's gain or loss on the disposition of the stock. We regard it as immaterial on the facts that the taxes may not have been paid during the taxable year 1940. *Park & Tilford*, 43 B. T. A. 348, 380; *Cambria Development Co.*, 34 B. T. A. 1155. The deal was closed in that year and the rights and obligations of the parties were fixed as of the date of the agreement. Cf. *Fordyce* v. *Helvering*, 76 Fed. (2d) 431; *Standard Lumber Co.*, 28 B. T. A. 352. Although the amounts had not been determined when the agreement was made, the taxes assumed by petitioner were due at that time and the agreement left no uncertainty that she would bear their full burden. Under such circumstances, the

assumption of liabilities must be regarded as the equivalent of cash paid as part of the consideration for the transaction. See 2 Mertens, Law of Federal Income Taxation, secs. 11.19 and 12.129.

Although the tax results here will be the same, we think correctness requires us to point out that the amounts of liabilities assumed should go in reduction of the amount realized by petitioner on the transaction rather than as an adjustment to the basis of her 2,544 shares.

We hold, therefore, that the basis to petitioner of the 3,409 shares of stock transferred under the agreement of September 20, 1940, was $100 per share, and that the amount realized by her on the transaction was $357,700, less the amounts of the tax liabilities assumed. Such amounts will be computed in compliance with the provisions of the statutes of Pennsylvania, apportioning Federal estate and state inheritance taxes between legatees.

Reviewed by the Court.

*Decision will be entered unler Rule 50.*