ESTATE OF LIONEL WEIL, DECEASED, HENRY WEIL AND WACHOVIA BANK & TRUST COMPANY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36237. Filed September 27, 1954.

*W. Frank Taylor, Esq.*, for the petitioners.
*R. V. Bradbury, Jr., Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* Respondent determined a deficiency of $68,556.19 in the estate tax of the decedent, Lionel Weil. The sole question to be decided is whether the value of decedent's interest in a partnership for the purpose of computing the gross estate is limited to the amount prescribed by certain agreements previously entered into by decedent and his partners.

All of the facts were stipulated and they are so found and incorporated herein by this reference.

Lionel Weil, hereinafter referred to as decedent, a citizen of the United States and a resident of Goldsboro, North Carolina, died testate on February 11, 1948, at the age of 70, survived by his widow and three children. His son, Lionel S. Weil, who died June 20, 1949, Henry Weil, and the Wachovia Bank & Trust Company qualified as executors of his estate. An estate tax return was filed with the collector of internal revenue for the district of North Carolina.

At the date of his death, decedent was the senior partner in the firm of H. Weil and Brothers which had its principal place of business at Goldsboro, North Carolina. The partnership was engaged in the general merchandising and farm supply business and owned and operated numerous farms devoted to the cultivation of tobacco and cotton. Until January 1, 1948, the partnership was also engaged in manufacturing fertilizer for use on its farms and for sale to farmers. That portion of the business was incorporated as of January 1, 1948.

The firm of H. Weil and Brothers, which was in active operation at the time of the trial, dates back to 1865. Upon the death of a partner or because of the admission of a new partner, there had been since 1865 and up to the time of the death of decedent 11 successive partnerships.

The earliest written partnership agreement entered into by members of H. Weil and Brothers was executed July 1, 1910. That agreement and each of the six succeeding partnership agreements executed up to the time of the decedent's death provided for the purchase of a deceased partner's share by the surviving partners at a fixed or determinable price based on the latest inventory of partnership assets as shown by the books of the partnership.

A new partnership agreement was executed on July 29, 1943, and this agreement was in effect on the date of decedent's death. It was provided that the duration of the partnership would be from June 7, 1943, to December 31, 1948; that Lionel, Abram, Henry, and Lionel S. Weil and G. Frank Seymour would be general partners and Elizabeth Rosenthal, Jr., a limited partner; that the investment of each partner on June 7, 1943, would be the amount stated therein and that thereafter the value of the investment of each partner would be the value as shown on the books of the partnership on January 1 of each year until December 31, 1948, on which date it was to be the value as shown on the books as of the close of business on that date; that after deducting salaries of the partners, traveling allowances, and interest on investments, profits were to be apportioned among the partners upon a basis agreed upon annually; and that net losses should be charged to the general partners in proportion to their investment in the business. Elizabeth Rosenthal, Jr., did not share in profits or losses but was entitled to interest on her investment at 5 per cent.

The names of the partners from 1865 to February 11, 1948, inclusive, are listed below, together with their relationship:

| Name | Relationship |
|---|---|
| Herman Weil | Brother of Henry |
| Henry Weil | Brother of Herman |
| Solomon Weil | Brother of Herman |
| Emil Rosenthal | Brother-in-law of Henry |
| Joe Rosenthal | Oldest son of Emil Rosenthal |
| Leslie Weil | Oldest son of Henry |
| Lionel Weil | Son of Solomon |
| Elizabeth Rosenthal, Jr | Daughter of Joe Rosenthal |
| Abram Weil | Son of Leslie |
| Henry Weil | Son of Leslie |
| Lionel S. Weil | Son of Lionel |
| G. Frank Seymour | No relation. |

Paragraph 4 of the partnership agreement executed July 29, 1943, provides as follows:

4. Upon the death of any partner, the amount due by the partnership to the deceased partner's estate shall be the value of his interest as shown by the books of the firm on the last inventory date, plus accrued interest at the rate hereinafter stipulated and accrued salary and allowances from such inventory date to the date of death of the said deceased partner; and no share in the profits or losses in the period between said inventory date and the death of the partner shall accrue to such deceased partner's estate.

Concurrent with the execution of the partnership agreement on July 29, 1943, an "Agreement Regarding Purchase of Partnership Interest in the Event of Death" (hereinafter referred to as purchase agreement) was executed by the partners which provided in general that in event of death of a general partner, settlement would be made with his estate in unsecured notes or in preferred stock of the corporation if a corporation was formed to take over the assets of the partnership. Payment of said notes or redemption of stock was to be in equal annual installments over a period of 10 years with option to anticipate notes or redeem stock in whole or in part at any time. No payment other than interest on notes or dividends on stock could be made until Elizabeth had been paid in full for her interest unless such priority was waived.

The purchase agreement provided in part as follows:

2. In case of the death of any of the general partners, the interest of the estate of said deceased partner in the assets of H. WEIL & BROTHERS shall be that as set forth in the Partnership Agreement, and the values shown by the books shall be conclusive and binding on the surviving partners and the executors and administrators of the estate of the deceased partner.

\* \* \* \* \* \* \*

3. Settlement shall be made by the surviving partners with the estate of the deceased partner either in unsecured notes maturing one-tenth annually and bearing interest at the rate set forth in Supplementary Agreement, or should the said surviving partners elect to incorporate the business, in unsecured notes or in preferred stock of the corporation, having the same book value as the

value of the deceased partner's interest in the partnership at the time of his death; provided, however, that the surviving partners or the corporation, if a corporation is formed, shall have the right to anticipate such notes either in whole or in part at any time within the period.

\* \* \* \* \* \* \*

6. Should the surviving partners elect, instead of carrying on the business, to liquidate the same, then Elizabeth Rosenthal, Jr., shall first receive the full amount of her interest \* \* \* as shown by the books of the partnership, and the balance shall be divided among the surviving general partners in proportion to their investment as shown by the books of the Partnership until all the surviving general partners shall have received the amount of their interest, and any surplus shall be divided among the surviving general partners in proportion to the share of profits which such partners would have received under the terms of the partnership agreement.

There was also in effect at the date of decedent's death a trust agreement, executed under date of April 27, 1942. All the trust assets were at all times carried on the books of the partnership.

Paragraph 2 (a) of the trust agreement provided as follows:

2. Without necessity in any case for application to or confirmation by any court and without the necessity of obtaining the consent of any person, said Trustees or the survivor of them shall have the power and are hereby authorized:

(a) To sell, exchange, lease, mortgage, pledge or otherwise encumber, publicly or privately, and with or without notice, for cash, or on credit, or partly for cash and partly on credit, in such manner and upon such terms and conditions as they may deem wise, any property hereby conveyed, or which may be acquired by them at any time, as the result of a sale or exchange of any of the properties above described, or that may hereafter be acquired by them or by the survivor of them in the administration of the trust estate hereby created.

On July 11, 1946, a "Partnership Insurance Agreement" was executed by the five general partners. That agreement recited that in the event of the death of Lionel Weil, the other four general partners would use funds provided by certain insurance policies taken on the life of the decedent for the purpose of purchasing his interest in the partnership. The agreement further provided that these owners of the policies were responsible for the payment of the premiums, that they retained all incidents of ownership, including the right to assign, pledge, release, or surrender the policies, and that in the event of the death of any one of the owners prior to the death of the decedent, the surviving owners would acquire his interest in the policies held by him, paying to his estate the cash value of such policies. At the time the agreement was entered into, insurance policies on the life of the decedent were held by the other partners in the following amounts: Lionel S. Weil, $33,366; Henry Weil, $25,000; Abram Weil, $25,000; and G. Frank Seymour, $16,634. The insurance agreement further provided as follows:

THAT WHEREAS, Lionel Weil, Abram Weil, Henry Weil, Lionel S. Weil and G. Frank Seymour, are the general partners of H. WEIL AND BROTHERS, a Limited Partnership, of Goldsboro, North Carolina, and

WHEREAS, in the event of the death of the said Lionel Weil, the other four general partners will have to arrange for the purchase of his interest in the partnership, as provided for in the partnership agreement and will desire to be able to do so without the necessity of liquidation, and

WHEREAS, said four general partners, Abram Weil, Henry Weil, Lionel S. Weil and G. Frank Seymour desire to be able at that time to pay at least a portion of the purchase price in cash, in lieu of having to give notes for the entire amount, and for that reason have obtained and are now carrying certain policies of insurance on the life of the said Lionel Weil * * *

*    *    *    *    *    *    *

3. The value of the interest of the said Lionel Weil in the partnership firm of H. WEIL AND BROTHERS, and the price to be paid therefor by said four other general partners shall be that as set forth in the Partnership Agreement in force between the partners at the time of his death and it is understood and agreed that no portion of his interest in said partnership other than in the ordinary conduct of the business shall be disposed of during the life time, except by mutual consent of all of the parties hereto.

4. The net proceeds of insurance on Lionel Weil's life, collected by the owners of the policies, shall be paid by them to the estate of Lionel Weil and credited on the price to be paid by the surviving partners for the said Lionel Weil's interest in the business. If such proceeds shall equal in amount the value of his interest in the business, then the amount received by the owners shall be paid to the estate of the said Lionel Weil as the value of such interest; if such proceeds exceed in amount the value of his interest in the business, then the owners shall pay unto his estate only the value of the deceased's interest; and if the proceeds of insurance shall be less than the value of the said interest of the said Lionel Weil, then payment of the balance of said interest shall be effected in accordance with the terms of the Partnership Agreement in force at the time of the death of the said Lionel Weil.

*    *    *    *    *    *    *

6. In the event of the death of the said Lionel Weil, the aforesaid owners of the Insurance policies on his life (Abram Weil, Henry Weil, Lionel S. Weil and G. Frank Seymour), hereby mutually agree among themselves that Lionel S. Weil, if he elects to do so, may take as much as $100,000.00 in value, or any portion thereof, of the interest purchased by them from the Lionel Weil Estate and that G. Frank Seymour, if he elects to do so, may take as much as $25,000.00 in value, or any portion thereof, of said interest, provided the right to purchase is exercised within ninety days after the death of said Lionel Weil, and provided they arrange individually for the payment of the purchase price for the interest purchased by them or either of them.

It is further agreed by all of the parties hereto that in the event the said Lionel S. Weil and/or G. Frank Seymour, shall exercise said right to make said purchase, the estate of Lionel Weil shall accept unsecured notes of the said Lionel S. Weil and of the said G. Frank Seymour for any balance of the purchase price after applying all cash available to them at that time and give full credit on the purchase price for the amount evidenced by said notes. Any such notes so given shall be payable in equal annual installments over a period of ten years and shall bear interest in accordance with the rates set forth in the partnership agreement then in force; and Lionel Weil hereby agrees and binds himself, his heirs, executors and administrators to accept such notes as part payment on the purchase price of his interest in lieu of notes to that extent signed by the other surviving general partners.

7. Lionel Weil is a party to this agreement and executes it solely for the purpose of binding his heirs, executors and administrators to accept the notes pro-

vided for in the preceding paragraph as a part of the purchase price for his interest in the partnership of H. Weil & Brothers after his death and for the purpose of agreeing and assenting to the provisions contained in paragraph three of this agreement.

In the decedent's last will and testament a trust was created under Item IV. Lionel S. Weil, the decedent's son, received one equal share of the remainder of the corpus after the trustees had fulfilled certain other obligations. In paragraphs 1 and 2 of Item VII, the trustees were instructed as to the manner in which the shares should be paid. However, it was provided in paragraph 3 of Item VII that:

If * * * my said son, Lionel S. Weil shall exercise his option of purchasing all or part of my interest owned by me at the time of my death, in the partnership firm of H. Weil & Bros., (and it is my wish and hope that he will do so), then and in such event, my Executors hereinafter named are authorized, empowered and directed to accept his unsecured notes for such part of the purchase price as is not paid in cash * * *. In such event, no payments shall be made to my said son, Lionel S. Weil, either by my Executors or by the Trustees under this item of my will, but all sums accruing to him will be applied as credits on his said notes * * *.

On July 12, 1946, the decedent executed a codicil to his last will and testament. In the codicil, paragraph 3 of Item VII was revoked and in lieu thereof, it was provided:

If, however, my said son Lionel S. Weil shall purchase from the other surviving partners in the partnership firm of H. Weil & Brothers a portion of the interest that I own in said partnership at the time of my death (and it is my wish and hope that he will purchase up to $100,000.00 of said interest), then and in such event my Executors are authorized, empowered and directed to accept his unsecured notes for such part of the purchase price as is not paid in cash, said notes to be payable over a period of ten years and bear interest at such rate as is provided for by the terms of the partnership agreement in force at the time of my death. In such event, no payment shall be made to my said son, Lionel S. Weil, either by my Executors or the Trustees under this Item of my will, but all sums accruing to him will be applied as credits on his said notes until his said notes are paid in full. Furthermore, if at the time the Trust provided for in Item IV, sub-section (d) is set up by the Trustees, his indebtedness to my estate exceeds the amount to be set aside for him in trust, the Trustees in lieu of setting up a trust for him, are authorized and empowered to credit the last maturing notes, in their reverse order, with the amount which would be allotted to him as a portion of my estate, without setting up any trust for him; or if his said notes which are unpaid do not amount to his full part of my estate, such amount of said notes as may be unpaid, will be set up by the Trustees as a part of the trust fund provided for him.

Decedent's investment account on the books of the partnership as of December 31, 1947, reflected a balance of $172,209.90, which amount was returned by his executors as the value of decedent's interest in the partnership on the date of his death. The fair market value of the assets owned by the partnership on that date and on the date of decedent's death was $538,866.17 greater than the value reflected by

the books of the partnership. The assets of the partnership were always carried on its books at cost, less accrued depreciation.

On December 31, 1947, and on the date of decedent's death, his investment account was 38.128 per cent of the total investment account of all the general partners. His interest in the profits of the business was 27½ per cent.

After decedent's death, his estate received $172,209.90, plus the amount of his drawing account balance on the date of his death, from the surviving partners in cash or in notes payable over a period of 10 years. The notes issued to the estate aggregated $161,500.

Lionel S. Weil agreed to take over individually $50,000 of notes due to the estate of decedent and the remaining notes were apportioned among the general partners as additional capital contributions on the same partnership ratio basis as their investments.

Decedent was the senior member of a partnership conducting a general merchandising and farm supply business dating back to 1865. Through the years, there were some 11 changes in membership because of the death of a partner or the admission of a new member. From the year 1910, the date of the earliest partnership agreement known to have been in writing, there appears a consistent policy of fixing contractually the amount to be paid the estate of a deceased partner by the surviving members of the firm for the interest of that deceased partner.

The partnership agreement in effect at decedent's death on February 11, 1948, was executed July 29, 1943. Under its provisions and the provisions of the purchase agreement, the surviving partners paid to decedent's estate an amount based on the book value of his share of the assets of the partnership. The parties are agreed that the fair market value of the partnership assets was substantially in excess of the book value.

About 19 months before his death, decedent and his partners entered into a further agreement which provided, among other things, that decedent would not dispose of his partnership interest without the consent of the other members.

We are asked to decide whether the value of decedent's interest in the partnership for purposes of computing the gross estate is limited to the amount provided for and paid under the partnership and purchase agreements. We are of the opinion that under the circumstances here present the valuation was so limited and that respondent was not justified in including in the gross estate an amount based on the fair market value of the decedent's partnership interest, unencumbered by the agreements.

It now seems well established that the value of property may be limited for estate tax purposes by an enforceable agreement which

fixes the price to be paid therefor, and where the seller if he desires to sell during his lifetime can receive only the price fixed by the contract and at his death his estate can receive only the price theretofore agreed on. *Estate of Albert L. Salt*, 17 T. C. 92; *Lomb* v. *Sugden*, 82 F. 2d 166; *Wilson* v. *Bowers*, 57 F. 2d 682.

On the other hand, it has been held where the agreement made by the decedent and the prospective purchaser of his property fixed the price to be received therefor by his estate at the time of his death, but carried no restriction on the decedent's right to dispose of his property at the best price he could get during his lifetime, the property owned by decedent at the time of his death would be included as a part of his estate at its then fair market value. *City Bank Farmers Trust Co., Executor*, 23 B. T. A. 663; *Claire Giannini Hoffman*, 2 T. C. 1160; *Estate of George Marshall Trammell*, 18 T. C. 662.

If the only agreements with which we are concerned were the partnership and purchase agreements which provided the manner and the price to be paid by the surviving partners for a deceased partner's interest at the time of his death and which agreements contained no restriction on the right of a partner to dispose of his interest in the partnership during his lifetime, it may well be that decedent's interest in this partnership would be includible in his estate at its full fair market value. But in this case we have a further contract, the so-called insurance contract, which must be read as supplemental to, and in connection with, the partnership and purchase agreements fixing the price to be paid to decedent's estate by the surviving partners. Under the partnership and purchase agreements, payment could be made therefor at the price fixed in unsecured notes extending over a period of 10 years. In the insurance agreement, it was provided that the net proceeds of the insurance on decedent's life collected by the other partners who were the owners of the policies were to be paid by them to the estate of the decedent and credited on the price to be paid by the surviving partners for the decedent's interest in the business. We thus have agreements whereby the surviving partners agreed to pay decedent's estate in a "medium" different from that provided for in the partnership and purchase agreements (viz, partly in cash) as well as at an earlier date than required by the partnership and purchase agreements. We think that this promise to pay partly in cash instead of all in notes and at an earlier time constitutes a good and valuable consideration passing from the surviving partners to the decedent and is sufficient to support his promise not to sell during his lifetime his interest in the partnership. Williston on Contracts, revised edition, volume 1, section 121, states the rule as follows:

If a debtor does something more or different in character from that which he was legally bound to do, this is sufficient consideration for a promise. Ac-

cordingly if a debtor pays his debt or part of it before it is due, or in a medium of payment different from that for which he was bound, or at a different place, or to someone other than the creditor, the consideration is sufficient to support a promise by the creditor.

A long series of decisions has established the rule that a benefit to the promisor or a detriment to the promisee is a sufficient consideration for a contract and when a good or valid consideration for an agreement exists the law will not weigh the quantum thereof. "The immediate settlement of an obligation, the payment of which may be legally delayed for a considerable period of time, is a benefit to the claimant" and constitutes a valuable consideration. *Rusconi* v. *California Fruit Exchange*, 100 Cal. App. Dec. 750, 281 Pac. 84. To constitute a sufficient consideration for a contract there need be no benefit to the promisor where there is detriment to the promisee. *Petroleum Refractionating Corp.* v. *Kendrick Oil Co.*, 65 F. 2d 997. The holdings of the Supreme Court of North Carolina are in harmony with this view of the law. *Exum* v. *Lynch*, 188 N. C. 392, 125 S. E. 15; *Grubb* v. *Ford Motor Co.*, 209 N. C. 88, 182 S. E. 730.

The foregoing authorities, we think, are a sufficient answer to respondent's contention that the insurance agreement was not based on a good and valid consideration sufficient to support decedent's promise not to sell his interest in the partnership during his lifetime. We are satisfied that the restriction not to sell, when coupled with the agreement to buy decedent's interest set out in the partnership and purchase agreements, had the effect of limiting completely the value of decedent's interest in the partnership. *Estate of Albert L. Salt, supra; Lomb* v. *Sugden, supra; Wilson* v. *Bowers, supra.*

Respondent argues in the alternative that the full value of decedent's interest in the partnership is taxable to his estate under section 811 (c) of the Internal Revenue Code of 1939 as a transfer made in contemplation of death, as a transfer in which the right to the income from the property has been retained for life, or as a transfer to take effect at or after death. Section 811 (a) of the 1939 Code provides for the inclusion of property owned by decedent at the time of his death. Section 811 (c) provides for the inclusion in the estate of property transferred by decedent in his lifetime under specified circumstances. But decedent did not transfer his interest in the partnership during his lifetime. An agreement to sell is not an agreement of sale, *Lucas* v. *North Texas Lumber Co.*, 281 U. S. 11. At the time the agreements were made, it was entirely possible that decedent's interest in the partnership would never pass to the other partners. He might well have survived them and acquired their interests rather than his interest being disposed of to them. Nor do we find in this case any evidence of a tax avoidance scheme. Similar contracts among the partners had appeared as early as 1910. Absent a transfer

by decedent in his lifetime, section 811 (c) has no application and decedent's interest in the partnership at the time of his death is to be included in the estate under section 811 (a). This we have so determined but, for the reasons heretofore given, only at the value that his estate may realize by reason of valid contracts entered into by decedent during his lifetime. Cf. *May* v. *McGowan*, 97 F. Supp. 326, affd. 194 F. 2d 396.

Reviewed by the Court.

*Decision will be entered under Rule 50.*