ANGELA FIORITO, EXECUTRIX OF THE ESTATE OF NICOLO FIORITO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68409.   Filed November 30, 1959.

*Joseph A. Barto, Esq.*, for the petitioner.
*Norman H. McNeil, Esq.*, for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in estate tax due from the estate of Nicolo Fiorito in the amount of $16,523.62.

The only issue left for us to decide is whether respondent erred in determining the value of decedent's interest in a partnership known as N. Fiorito Company to be his pro rata share of the fair market value of the partnership net assets as of the date of decedent's death rather than the option price for which the surviving partners could and did purchase decedent's partnership interest after his death, as reported on the estate tax return.

The facts were all stipulated and the stipulation of facts is included herein by this reference.

Nicolo Fiorito died in Seattle, Washington, January 15, 1953. His estate is in probate in the Superior Court of the State of Washington for King County. Petitioner is the duly qualified and acting executrix under the will of Nicolo Fiorito and resides in Seattle, Washington. On April 13, 1954, an estate tax return for the estate of Nicolo Fiorito was filed with the district director of internal revenue at Seattle, Washington, and the tax as computed thereon was paid.

Decedent and Angela Fiorito were married on July 11, 1910, and at all times material hereto constituted a marital community under the laws of the State of Washington.

Prior to and on October 3, 1945, Nicolo Fiorito, Angela Fiorito, Paul Fiorito, and Dan Fiorito, the latter two being sons of Nicolo and Angela, were partners in the general contracting business doing business under the partnership laws of the State of Washington under the partnership name N. Fiorito Company.

On October 3, 1945, the above partners entered into a written agreement, pertinent parts of which are as follows:

THIS PARTNERSHIP AGREEMENT made and entered into by and between N. FIORITO, ANGELA FIORITO, PAUL FIORITO and DAN FIORITO, all of Seattle, Washington,

WITNESSETH:

WHEREAS, the persons above named are now engaged in a general contracting business under the firm name and style of N. FIORITO COMPANY, and

WHEREAS, SAID parties now own and are using certain valuable contractors' equipment and other assets, the statement of which as of October 31, 1945, is set forth as Exhibit "A" in this agreement.

NOW, THEREFORE, IT IS HEREBY AGREED by and between the various parties hereto, as follows:

1. The parties hereto agree to form and do hereby form a new partnership under the firm name and style of N. FIORITO COMPANY. The general purpose of said partnership shall be to carry on and conduct a general contracting business and such other business as the partners may from time to time agree upon.

2. Each of the parties hereto shall be liable as a general partner for any debts, liabilities or obligations of the partnership, but as between themselves the profits and losses of the partnership shall be divided or borne upon the following basis:

| | |
|---|---|
| N. FIORITO | 25% |
| ANGELA FIORITO | 25% |
| PAUL FIORITO | 25% |
| DAN FIORITO | 25% |

3. It is agreed that in determining the policies of the partnership, and in determining any other matter in question, item or dispute arising in connection with the administration of the partnership that N. FIORITO shall be the managing partner, however, each partner shall be entitled to a voice and in the event of a dispute, no action may be taken without the full agreement of all partners.

\*     \*     \*     \*     \*     \*     \*

6. As a part of the consideration for the execution of this agreement, the said partner N. FIORITO does hereby give and grant to PAUL FIORITO and DAN FIORITO equally an irrevocable privilege and option without right of assignment of purchasing the entire interest of said N. Fiorito in said partnership and in and to any and all of the property or assets of said partnership. Said option to be exercisable for a period of 90 days from the end of the month in which said N. Fiorito dies and said purchase is to be made on the following basis:

(a) The purchase price shall be the amount standing on the partnership books at the end of the month in which N. Fiorito dies after deducting all amounts due the partnership from N. Fiorito, but not including any allowance for goodwill, business on hand or any other item not shown in the capital account of N. Fiorito, according to recognized accounting practices.

(b) Upon exercising said option, said Paul Fiorito and Dan Fiorito shall pay in cash to the Estate of said N. Fiorito $\frac{1}{45}$ of the amount of said purchase price and discharge the balance by executing and delivering to the Estate of said N. Fiorito a non-negotiable promissory note for the amount of said balance, which said note shall be payable in 56 equal installments, the first of which installments shall fall due three months from the date of the exercise of said option, and each installment thereafter shall be paid quarterly and shall bear interest at the rate of 3% and the interest shall be paid at the time of each installment.

(c) The option herein given shall be deemed sufficiently exercised by delivery of a written notice within the ninety day period together with a certified check for the $\frac{1}{45}$ of the purchase price to the administrator, Executor or Executrix of the estate of the said N. Fiorito.

\*       \*       \*       \*       \*       \*       \*

9. It is understood and agreed that the profits of the partnership created by this agreement shall be ascertained at the end of each Fiscal year ending October 31, and credited on the books of the several partners in accordance with their respective interests. In order to insure the continuity of the partnership and to protect the credit, assets and working capital, it is specifically agreed that no withdrawal shall be made of the partnership profits except by unanimous consent of the partners.

\*       \*       \*       \*       \*       \*       \*

11. The rights and interest of the several partners shall not be transferable or assignable.

In paragraphs 7 and 8 of the partnership agreement, Dan Fiorito and Paul Fiorito each gave reciprocal options to the other two male partners in exactly the same language contained in paragraph 6, part of which is quoted above. Angela Fiorito was not made a party to any of the option clauses. The agreement contained no specific provisions with respect to dissolution of the partnership or withdrawal of a partner.

By oral agreement in October 1949, the partnership of N. Fiorito Company amended the profit ratio under the agreement of October 3, 1945, to one-third to each male partner, and Angela Fiorito's capital account was merged into Nicolo Fiorito's capital account.

The amounts outstanding in the capital accounts of each of the male partners as of November 1 for each of the years 1949 through 1952 are as follows:

| Date | Decedent | Paul Fiorito | Dan Fiorito |
|------|----------|--------------|-------------|
| Nov. 1— | | | |
| 1949 | $130,899.15 | $41,548.90 | $66,163.69 |
| 1950 | 161,446.34 | 62,261.03 | 86,704.21 |
| 1951 | 173,696.03 | 70,623.56 | 92,572.87 |
| 1952 | 194,704.47 | 93,628.18 | 116,265.94 |

On January 31, 1953, 2 weeks following decedent's death, the capital accounts of decedent, Paul Fiorito, and Dan Fiorito, as shown by the partnership books of N. Fiorito Company, totaled $182,782.25, $82,197.48, and $104,893.72, respectively.

On February 6, 1953, the surviving partners, Paul Fiorito and Dan Fiorito, exercised their option to purchase decedent's interest in the partnership under paragraph 6 of the partnership agreement of October 3, 1945, for $182,782.25, that being the book value of decedent's entire interest in the partnership and in and to the property or assets of the partnership on the date of his death.

An appraisal of the fixed assets of N. Fiorito Company as of the date of decedent's death shows the fair market value of land, buildings, and equipment to be $113,255.23 in excess of the value per books. The parties by stipulation accept this appraisal figure as the fair market value of those partnership assets as of the date of decedent's death.

The value of decedent's partnership interest in N. Fiorito Company was reported by petitioner in the Federal estate tax return at $182,782.25, the book value of decedent's interest in the partnership as of the date of death. In his notice of deficiency respondent determined that for estate tax purposes decedent's partnership interest should be valued at decedent's pro rata share of the fair market value of the net assets of the partnership rather than the book value of decedent's interest as shown on the partnership books.

Sections 811 and 811(a), I.R.C. 1939, provide in substance that the value of the gross estate of a decedent shall be determined by including the value at the time of his death of all property wherever situated, except real estate situated outside the United States, to the extent of the interest therein of the decedent at the time of his death. The question is whether the restrictions in the partnership agreement mentioned above limited the value of decedent's interest in the partnership to the option price fixed by the agreement, which was admittedly less than the fair market value of the land, buildings, and equipment of N. Fiorito Company as of the date of death.

The effect on taxable value of restrictive agreements of this sort has been considered by the courts on a number of occasions, usually, however, involving valuation of stock of closely held corporations. In *Estate of Lionel Weil*, 22 T.C. 1267, 1273, wherein this Court was considering the value of a partnership interest, we said:

It now seems well established that the value of property may be limited for estate tax purposes by an enforceable agreement which fixes the price to be paid therefor, and where the seller if he desires to sell during his lifetime can receive only the price fixed by the contract and at his death his estate can receive only the price theretofore agreed on. *Estate of Albert L. Salt*, 17 T.C. 92; *Lomb* v. *Sugden*, 82 F. 2d 166; *Wilson* v. *Bowers*, 57 F. 2d 682.

On the other hand, it has been held where the agreement made by the decedent and the prospective purchaser of his property fixed the price to be received therefor by his estate at the time of his death, but carried no restriction on the decedent's right to dispose of his property at the best price he could get during his lifetime, the property owned by decedent at the time of his death would be included as a part of his estate at its then fair market value. *City Bank Farmers Trust Co., Executor*, 23 B.T.A. 663; *Claire Giannini Hoffman*, 2 T.C. 1160; *Estate of George Marshall Trammell*, 18 T.C. 662.

Also see *Brodrick* v. *Gore*, 224 F. 2d 892 (C.A. 10).

The parties agree that the above is a correct statement of the rules governing resolution of the issue here—except that petitioner argues that the partnership laws of the State of Washington must also be considered in determining the right of any of the partners to dispose of their interests in the partnership and/or its assets at the full market value thereof prior to death.

Respondent does not dispute that this was a valid partnership agreement supported by adequate consideration and gave the surviving partners an enforcible option to purchase decedent's interest in the partnership after his death at its book value on the date of his death. Respondent also recognizes that the agreement contemplated the continuance of a bona fide business arrangement between the parties at the time of its execution in 1945, and that the parties intended the provisions of the agreement to survive the merger and extinguishment of Angela Fiorito's interest in 1949. Respondent's argument is that while the agreement may be binding on the parties, it does not limit the value for estate tax purposes unless it not only fixes the price to be paid for the interest after death but also the price for which the interest could be disposed of prior to decedent's death, and that there is nothing in this agreement which either gave the other partners an option to purchase decedent's interest at a fixed price prior to his death, or which would have prevented decedent from withdrawing from the partnership prior to his death and disposing of his interest in the partnership assets for their full market value.

Certain language in this partnership agreement is not entirely clear as to what was intended but we think that when the instrument is considered as a whole in the light of the circumstances existing at the time of its execution, it is clear that the parties intended to insure continuity of the business enterprise both during the life of and after the death of any of the partners, provided the surviving partners so elected.

The parties had been conducting a general contracting business and using valuable equipment and other assets necessary for the conduct of the business. It is obvious that one of the principal objects of the partnership agreement was to assure to the partnership continued use of those assets. The partnership agreement was executed more than 6 years prior to decedent's death and each partner granted reciprocal options to the other partners to purchase his interest in the partnership. The option price was the amount standing in the partners' capital account at the time, which in a general partnership would normally be indicative of a partner's interest in the partnership, absent some agreement to the contrary, and the form of the agreement indicates a business arrangement rather than an effort to transfer property to one who might be the object of the grantor's bounty for less than an adequate consideration.

The option granted by each of the partners to the others was "irrevocable" and "without right of assignment," and was a privilege and option "of purchasing the entire interest of" the partner "in said partnership and in and to any and all of the property or assets of said partnership," without specific mention in the sentence of when the options were exercisable. The agreement also provided that "[t]he rights and interest of the several partners shall not be transferable or assignable." While it is not clear what "rights and interest" this language referred to, it would appear that it did not refer simply to the options granted because a restriction on the right to assign the options was specifically contained in the clauses granting the options. It more logically referred to the rights and interest of the partners in the partnership and was intended to be a restriction on the right of a partner to sell or otherwise dispose of his partnership interest prior to death, at least without the consent and agreement of all the partners.

It is true that the sentence following the granting of the option provided that the option was "exercisable for a period of 90 days from the end of the month" in which a partner died and that the purchase price was related to the capital account of the partner at the end of the month in which he died, so that in fixing a purchase price the parties seemed to be more concerned with the time after death of a partner than with the time prior to death. But even

though the price set in the agreement relates only to the price to be paid for an interest after the death of a partner, if the agreement effectively restricted a partner's right to sell his interest prior to death, the value of the partnership interest for estate tax purposes is limited by the option price for purchase of the interest after his death. Such was the situation in *Estate of Lionel Weil, supra,* and *Edith M. Bensel et al., Executors,* 36 B.T.A. 246, aff'd. 100 F. 2d 639 (C.A. 3), in each of which the option price was found to be controlling.

The cases which have not recognized the depressive effect on value of agreements to sell at a fixed price less than market value after death have usually been based either on the conclusion that the option agreement amounted to a transfer in contemplation of death or intended to take effect at or after death, with which we are not here concerned,[1] or that since the tax is imposed on the value of the net estate *transferred,* if the decedent could have disposed of the property for its market value immediately prior to death, the net estate transferred should include the full market value of what decedent owned immediately prior to death unlimited by an agreement which would limit the value that could be realized on the property only after death. The latter assumes not only that decedent had the right to or at least could have disposed of his interest in the property prior to his death, but also that he could have disposed of it for more than the option price; in this case respondent says for the pro rata portion of the fair market value of the fixed assets owned by the partnership.

We interpret the agreement here involved to restrict decedent's right to sell his partnership interest prior to his death. While there is some doubt, because of some ambiguity in the partnership agreement, just what would have been the situation had decedent attempted a unilateral withdrawal from the partnership prior to his death, an interpretation of the partnership agreement as a whole might well have limited his rights to the right to withdraw the amount in his capital account at that time.

The partnership laws of the State of Washington relied on by petitioner, being title 25, chapter 4, Washington Revised Code, are also of interest in this connection. Without attempting to interpret those laws, the provisions thereof dealing with the property rights of a partner and a partner's rights upon dissolution of a partnership appear to sufficiently restrict or limit the rights of a partner

---

[1] (The reciprocal options granted by each of the partners furnished adequate consideration for decedent's agreement so as to distinguish this case from *Claire Giannini Hoffman,* 2 T.C. 1160, aff'd. sub nom. *Giannini v. Commissioner,* 148 F. 2d 285 (C.A. 9), certiorari denied 326 U.S. 730, and the agreement to sell at a future date did not constitute a transfer of a present interest for less than adequate consideration. *Estate of Lionel Weil,* 22 T.C. 1267.)

attempting to sell his partnership interest or withdraw without the consent or agreement of the other partners to make the salable market value of such an interest at least uncertain.

In any event, decedent was not a free agent prior to his death to dispose of his partnership interest or his interest in the assets thereof to an outsider for the fair market value of the net assets of the partnership without the agreement and consent of the other partners. Such being the case, we are here concerned with the value of decedent's partnership interest at the time of his death, *Helen S. Delone*, 6 T.C. 1188, rather than with the fair market value of the net partnership assets at the time of his death, and we find that that value was limited to the amount in his capital account on the date of his death.

Because of other issues conceded by the parties,

*Decision will be entered under Rule 50.*